Docket No. 12-CV-3626(MKB)(LB)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**ORIGINAL**

------------------------------------------------X

KIM DEPRIMA,
    PLAINTIFF

Vs.

CITY OF New York DEPARTMENT OF
EDUCATION,
    DEFENDANT.

SECONDED AMENDED
COMPLAINT
("JURY TRIAL DEMANDED")

------------------------------------------------X

COMES NOW THE PLAINTIFF, KIM DEPRIMA and amends the original COMPLAINT against the DEFENDANT, CITY OF NEW YORK DEPARTMENT OF EDUCATION and moves this honorable court in the United States District Court for the Eastern District of New York for a trial by jury at the time and place appointed by this court.

**STATEMENT**

This action is brought pursuant to the 14th Amendment of the United States Constitution under the Due Process Clause of that Amendment. This action also arises under section 1983 of Title 42 of the United States Code for deprivation of rights. This action also arises under Title VII of the Civil Rights Act of 1964 because the Defendants intentionally discriminated against the Plaintiff. The Plaintiff further brings this action pursuant to Title 28 of the United States Code, Sections 1331 and 1343.

### PARTY ADDRESSES AND ACTION DATE

1. Plaintiff resides at 158 Willowbrook Road, Staten Island, New York 10302. (718) 442-2907

2. The Defendants have their place of business at 100 Church Street, New York New York 10007 and is represented in this action by Benjamin Welikson who is an agency attorney for the New York City Department of Education. (212) 788-0924.

3. Plantiff was terminated from her employment at P.S.26 located in Staten Island within District 31 also know as The Carteret School.

4. Plaintiff asserts the action took place on November 11, 2011.



RECEIVED
FEB 0 6 2013
PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

Kim DePrima

Plaintiff,

-against-

NYC Department of Education
Defendant.

---------------------------------------X

**ORIGINAL**

Affirmation of Service

12 cv 3626

I, Kim DePrima, declare under penalty of perjury that I have served a copy of the attached **2nd Amended Complaint** upon **NYC Law Department** whose address is: **100 Church Street N.Y. NY 10007**

Dated: Feb 6, 2013
, New York

Kim DePrima
Signature

158 Willowbrook Rd
Address

SI NY 10302
City, State, Zip Code



RECEIVED FEB 06 2013 PRO SE OFFICE

## CAUSES OF ACTION

1. Defendants have wrongfully and unlawfully terminated Plaintiff's employment in violation of federal law under the 14th amendment, specifically her right to equal protection under the law.

2. Defendants have wrongfully terminated Plantiff under the New York State Law, which protected her from being discriminated against based on criminal charges, which were never filed against her and required to be sealed, specifically New York Executive Law 296 (16) and New York Criminal Procedure Law 160.50.

3. Defendants discriminated against plaintiff and sought her termination in two prior 3020 (a) hearings and its attempts to terminate her were denied. On the third attempt, the Defendants unlawfully and wrongfully obtained Plantiff's termination.

4. Defendants discriminated against Plaintiff based on the prior 3020(a) hearings, which demonstrated that none carried the penalty of termination.

5. Defendants have discriminated against Plaintiff because the history of the prior 3020 (a) hearings demonstrate that the instant 3020(a) hearing cited conduct of Plaintiff as questionable but in all other respects found her to be competent to continue teaching.

6. Defendants have discriminated against Plaintiff because the prior 3020(a) hearings demonstrate that the defendants deliberately, intentionally and with reckless disregard for the truth leveled arbitrary and capricious charges against Plaintiff continuously in order to achieve her termination.

7. Defendants have discriminated against Plaintiff because after its prior attempts to terminate her were rebuffed by independent arbitrators, Defendants continued to file arbitrary and capricious charges against Plaintiff until it reached her termination.

8. Defendants have discriminated against Plaintiff because it violated New York State Law by using information that it knew or should have known was barred from being used at the instant 3020(a) hearing.

9. Defendants have discriminated ageist Plaintiff because it commerce the instant 3020(a) hearing prior to the resolution of the criminal allegations in order to specifically gain a tactical advantage over Plaintiff to achieve her termination.

10. Defendants knew that if they commerce the 3020(a) hearing prior to the resolution of the criminal allegations, they could rely on the acts alleged to terminate Plaintiff, this violated Plaintiff's rights to be treated equally and fairly under the law.

11. Defendants discriminated against Plaintiff and knew that they were discriminating against her when it sought and obtained Plaintiff's termination because it had sought her

termination for conduct in a prior 3020(a0 hearing that they felt she should have been terminated for, but which an arbitrator found that she should not be terminated.

12. Defendant have not treated Plaintiff equally and fairly under the law as is required by the 14th Amendment the Defendants await the resolution of the criminal allegations before relying on such allegations which comprised the conduct that were the subject of the Plaintiff's termination.

13. Defendants have not treated Plaintiff equally and fairly under the law as is required by the 14th amendment standards in order to receive her termination within the confines of the law.

14. Defendants have discriminated against Plaintiff because it terminated her for criminal allegations for which she was never convicted in violation of New York State Law, which specifically prevents the use of the criminal allegations to terminate her when those allegations were resolved in her favor.

15. Defendants have discriminated against Plaintiff because the have deprived her of a property right in which she had an interest and such right was protected under the 14th amendment to The Constitution and under New York State Law.

16. Defendants have discriminated against Plaintiff because of its findings to justify her termination was an illegally concerted effort on the part of the Defendants to achieve her termination even though they knew it was barred from using the allegations against her.

17. Defendants have discriminated against Plaintiff because of its own admission that the Plaintiff was not convicted of the criminal allegation that were used in the instant 3020 (a) hearing to achieve her termination and such a finding demonstrates that the defendants were only interested in her termination.

18. Defendants have discriminated against Plaintiff because had Plaintiff not been the subject of a prior 3020(a) hearing that involved manslaughter, Defendants would not have consistently sought her termination.

19. Defendants have discriminated against Plaintiff because the alleged conduct that was never charged against the Plaintiff was later denied by the alleged participants in the alleged conduct and such a denial implicated the 14th Amendment's equal protection clause and New York State Law, both of which protects the Plaintiff's property right and interest in her employment.

20. Defendants have discriminated against Plaintiff in finding that the alleged conduct constituted grounds for termini nation when a court of a competent jurisdiction dismissed the allegations with prejudice and the key participants in the alleged conduct deny that the conduct took place as originally reported.

21. Defendants discriminated against Plaintiff when it deprived Plaintiff of a right to a fair hearing that excludes information and alleged conduct that is barred by law when it circumvented the legal process and preempted the court's findings and order that the criminal allegations be dismissed for the sole and only purpose of terminating Plaintiff's employment.

22. Defendants discriminated against Plaintiff when it took action and refused to separate professional standards in the work place and that of private personal decisions of Plaintiff in order to achieve termination.

23. Defendants have discriminated against Plaintiff when two prior 3020(a) hearing found that the Defendants were wrong to seek termination of Plaintiff when her work history and performance as a teacher demonstrated that her private choices did not affect her ability to effectively teach her students.

24. Defendants have discriminated against Plaintiff when the hearing officer in the instant 3020(a) hearing like the previous two hearing officers found that the Plaintiff's work history was satisfactory and she was not terminated in either of those proceedings.

25. Plaintiff was a tenured teacher and was entitled to have a fair hearing free from bias and discrimination because of past acts and Defendants deprived Plaintiff of this right solely because of the manslaughter conviction.

26. Defendants had the goal of terminating Plaintiff since the 2009 3020(a) hearing in which the manslaughter conviction was the main issue and the Defendants were denied their request for termination, they continued to level arbitrary and conspicuous charges against Plaintiff to achieve her termination.

27. Defendants discriminated against Plaintiff because it used charges that contained filing falsified instruments and a massive number of procedural violations that included tardiness and absences in the aftermath of the 3020(a) manslaughter hearing to try to achieve the termination of the Plaintiff.

28. Defendants showed a pattern of discrimination against the Plaintiff by seeking to terminate Plaintiff specifically for conduct that would not have been pursued toward a vast majority of other tenured teachers.

29. Defendants have shown a pattern of discrimination by achieving the termination of Plantiff using actions that were later found to be without merit and untrue, specifically, the Arbrtitrator found that the Plantiff had not submitted any false documents at all.

30. Defendants showed a pattern of discrimination by achieving the termination of Plantiff using an unfair reassignment that was not reflected inn her evaluations, specifically Pantiff never received an unsatisfactory report by superiors prior to her termination.

31. Defendants showed a pattern of discrimination because it in fact discriminated against Plantiff, specifically noting that her termination was based on "conduct" that affected the Defendant, but the Plantiff was never convicted of the conduct and was denied by the key participants and it was used against her only to achieve unlawful termination.

32. Defendants showed a pattern of discrimination against Plantiff because Defendants do not have a history of terminating tenured teachers because of conduct that did not directly affect the tenured teacher's ability to perform her duties. Specifically tnured teachers who have had relationships with their students are normally terminated, physical abuse of students are grounds for termination, and no history is present with the Plantiff.

33. Defendants have in fact discriminated against Plantiff because no sucj charges have been leveled against Plantiff and Plantiff has received several years of satisfactory ratings, even in the instant 3020(a) hearing there were no unsatisfactory reports, thus making unreasonable any finding by the Defendants that Plantiff could no longer perform her duties.

34. Defendants have shown a patter of discrimination and concerted, deliberate, and planned effort to terminate Plantiff's employment in violation of the law, for specifically, two independent arbritrators found that Defendants request for termination in two separate 3020(a) hearings were n out warranted.

35. Defenadants have discriminated against Plantiff in terminating her employment because she was not able to perform her duties in the classroom and to be impressionable upon her students because prior attempts for those reasons were rejected.

36. Specifically on Noverber 7, 2009, the independent Arbritrator found that there was "no evidence in the record whatsoever to suggest Respondent has ever failed to properly supervise the children in her class, nor any indication that Respondent has exercised poor judgement in the performance of her duties." Thus, the Defendant discriminated agains Plantiff in using the hearing as justification for termination in the instant 3020(a) hearing.

37. On November 7, 2009 the independent Arbritrator found specifically that " The Arbritrator is not persuaded that the unfortunate circumstances of the dogs getting loose on the property would translate into the Respondent being negligent in the care of her student" Thus the Defendant discriminated against Plantiff in using this hearing as justification for termination in the instant 3020(a) HEARING.

38. The indepependant Arbritrator found "Similarly, the alleged generalized commets by the faculty and administration regardin Respondents boyfriend is little more than idle gossip, absent any proof of demonstrated poor judgement in the classroom". Thus, the Defendants discriminated against Plantiff in using such information in the instant 3020(a) hearing.

39. Finally, the arbritrator found in rejecting Defendants request for termination, "the arbritrator also considered that Principal Barnes expressed to respondent in April 2009 that she hoped the Respondent could return to school and participate in the Reading Recovery Program. Further, there is no evidence in the record critical of the Respondents performance when she was in school". Defendants discriminated against Plantiff in terminating her employment bases on this reasoning in the instant 3020(a) hearing.

40. In December 2010, Defendants yet sought the termination of the Plantiff, less than one year after being rejected in a further pattern of discrimination.

41 The Defendants sought termination under the "progressive discipline" theory relying upon the November 7, 2009 3020(a) hearing, but the Defemdants request was again rejected as "unsubstantiated". Defendants continued a pattern of discrimination as a result.

42. The Arbritrator of December 3, 2010 held, "Generally the important timing question for purposes of progressive disciplineis whether the supposedly prior discipline occurred before the acts for which the current discipline is being considered." Defendants discriminated against Plantiff in the instant hearing because it sought to use the "mansklughter hearing" as justification for terminating Plantiff which had been rejected.

43. The Arbritrator found, "That is not the case here, and it would not be consistent with progressive discipline for me to consider Respondent's prior 3020(a) hearing penalty in this case". Defendant discriminated against Plntiff because it had been on notice that using prior acts from prior hearings had already been rejected, thus use of the information again to obtain termination shows a pattern of discrimination.

44. The Arbritrator found that the Defendants charges against Plantiff in the December 2010 hearing were not "substantiated". Finding, "I have found that the Department has not proved that the Respondent submitted any false documents, so the cases the Department cites are not instructive to me on the pr opriety of termination in this case". Defendants' discrimination against Plantiff is plain in the continous mature that it sought Plantiff's termination for acts that she never committed.

45. Finally the Arbritrator found, "Submitting false documents are, all else equals a far more serious offense than the single mom-falsification act I found Responded committed". Defendants had continued to seek the termination of Plantiff through frivolous accusations and were rebuffed by two independenat Arbritrators, thus the discriminatory practice against Plantiff is plain.

46. The two opinions and awards on November 7, 2009 and December 3, 2010 more than demonstrate that the Defendantss used discimatory practices against the Plantiff and establishes a decimator pattern designed only to acieve her termination.

47. Defendants yet again filed charges against Plantiff less than a year later after the

second attempt to achieve termination had failed, and after these failed attempts, Defendants finally achieved what they had sought two years before, on November 11, 2011 Defendamts finally unlawfully obtained the termination of the Plaintiff.

48. Defendants used a domestic dispute in which the Plaintiff was found by the Arbitrator to have been involved; even after a court of a higher jurisdiction has dismissed the allegations and sealed the record, to achieve her termination in violation of the law and through deliberate discrimination.

49. Defendants commenced a third 3020(a) hearing against the Plaintiff based on the alleged conduct prior to the allegations being adjudicated in court, thus violating the equal protection of the Plantiff's right to a fair and equal hearing without the use of barred information.

50. Allegations against the Plantiff were dismissed with prejudice by the court, yet Defendants still used the information against Plaitiff in violation of New York State Law for specific purposes of abating the Plantiff's termination after it failed to do so on two separate occasions.

51. In an opimion and award on November 11, 2011, the arbritrator finally terminated the Plantiff's employment, unlawfully granting the Defendants what it had been strategically seeking since 2009.

52. The Arbritrator found "the fact that the charges against Respondent were dismissed does not mean that the conduct did not occur." Nevertheless, under the law, the fact that Plantiff was not charged with the conduct is the precise reason that New York State Law prevented its use in a subsequent hearing, so that Plantiff would not be negatively affected by a favorable ruling. Since the Defendants were seeking Plantiff's termination, it ignored the rights she was entitled.

53. The arbritrator found that the change in testimony of key participants in the hearing was contradictory to the initial reports but that was incredible and a shock. The Arbritraot's decision to terminate supported the discrimination that Defendants have been practicing against Plantiff because the testimony from the key participants in the alleged conduct is what prompted the New York State District Attorney's Office to recommend dismissing the case that the court ultimately did. Thus, the findings of the arbritrator support the discrimination complained of by Plaintiff.

54. The Arbrtitrator found "I can not require the DePartment of Education to asssume the risk that in the future, the Respondent could engage in conduct that would jeopardize the well being of students entrusted in her care". However, this finding supports the discriminaton against the Plantiff in that the Defendants never presented and the Arbitratrot never found that the Plantiff have placed the well-being of students at any tine. Indeed, she had found to be a satisfactory teacher her entire career.

55. The historical findings that Plantiff has been a satisfactory teacher and the fact that two prior hearing officers held that the defendants were not justified in the action that it sought further supports the fact that the Defendants had a conrted effoert to terminate Plantiff's employment.

56. The Arbritrator of November 11, 2011, found, while certain aspects of Respodents' private life may be of no legitimate concern to the Department, in this case the fact the Respondent engaged in the type of behavior at issue is a matter of legitimate concern to the Department". The court did not hear any facts that would make the Plantiff responsible for the alleged acts that the arbritrator found, those facts were demied by the key participants and the courts dimissed and sealed the case, thus the only conclusion from this finding is that the Defendants used the alleged acts unlawfully to justify the termination of the Plaintiff.

57. Descrimination is evident in this case because the information used against the Plaintiff in the 30202(a) hearing was prohibited fromm being adversely used against her, Defendants permitted its use and terminated Plaintiff.

58. Defendants discriminated against Plaintiff because the Arbritrator found that the conduct "impacted her fitness to teach" based on conduct dismissed by the courts of a competent jurisdiction; it was prevented from being used by the Defendants against the Plaintiff, and there was no finding independently that Plaintiff could not perform her duties. The Defenddants offered no evidence that t termination was required because Plaintiff was unfit to teach.

59. The Arbritrator acknowledged, "While I agree ther e is no evidence in the record that Respondent was not a satisfactory teacher as of January 7, 2011 that does not conclude the inquiry whether she continues to be fit to teach". However, the inquiry was never about whether she was fit to teach because no evidence of the charges was presented for such an inquiry. The inquiry was held on conduct that was never to be before the Arbitraor because New York State Law and had the inquiry been about Plaintiff's ability to be fit to teach, the 14th Amendment required that she be given the opportunity to address that issue. Plaintiff was discriminated against.

60. Neither the Arbritraor or the Defendants presented any incident which happened over the course of the Plantiff's career that demonstrated that she was enable or unfit to be an effective teacher, thus the Defendants continued their pattern of discrimination.

61. Defendants did not cite any students who had made a complaint against the Plantiff, and it did not cite any complaints from students' parents about Plantiff's inability to teach her students even after the incident was referred to local to newspapers. The alleged acts were dismissed and the Plaintiff was not charged with the conduct upon which her termination was based, thus this reveals the discriminatory nature of the Defendants against the Plaintiff.

62. The Arbritrator found that on behalf of the Defendants ther Plaintiff " can not be a role model for impressionable students" and that she showed " an outstanding lack of judgement " and that "she can no longer be trusted to exercise the type of judgement required of teachers working with students working with students in New York City Schools. Nevertheless, the finding is clearly at odds with the history of the Plaintiif's performance and shows the decimator lengths at which the Defendants went to achieve her termination.

63. Defendants did not produce any evidence that Plaintiff lacked good judgement when it came to teaching students in her classroom. Moreover, Plaintiff consistently received satisfactory evaluations that do not support the discriminative position of the Defemdants.

64. The Defendants created a risk for the Plaintiff that did not exist, was not present to support her termination and there was no support or evidence in the record that Plaintiff was a risk to her students in the classroom. Thus, risk was created for the sole purpose of discriminating against the Plaintiff to terminate her employment.

65. The Arbritrator on behalf of the Defendants cited both the Nvember 2009 and December 2010 3020(a) hearings to support it conclusion. However, the findings in both of the proceedings were more favorable to the Plaintiff than the Defendants had sought, they did not achieve her termination and they brought additional charges in an effort to terminate her yet again, it is discrimination.

66. Defendants have used a deliberate, planned and concerted efoort to terminat Plaintiff... I had sought her termination since 2009 and tried each subsequent year thereafter to terminate her until those fforts succeeded in 2011.

67. Defendants violated Plantiff's rights under New York State Law. It violated her rights under the Constitution. Defendants have distorted and misrepresented Plaintiff's teaching record in order to achieve her unlawful termination.

68. This Complaint more than sufficiently establishes factual disputes that should proceed to jury for trial.

69. Defendants should not be allowed to commit these obvious patterns of discrimination again Plaintiff and terminate her employment in violations of New York State Law and the Constituition.

70. Plaintiff has been intentionally discriminated against by the Defendants because it reached beyond the professional realm of tolerance to Plaintiff's private life to institute proceedings designed to deprive her of a protected private property interest.

71. Plaintiff had not materially disrupted the educational interests of the Defendant when her employment was terminated; Plaintiff had not undermined the authority of the Defendant; and Plaintiff did not affect in any negative way any working relationship at the specific places of employment where she worked nor had the relationship of the Defendant been negatively affected. They terminated her employment to achieve the goal that it sought when she had been found guilty on a more serious charge in the 2009 3020 (a) which was not the result that the Defendant's desperately sought.

72. Plaintiff enjoyed a protected liberty interest in the private dealings of her life under the First Amendment so that any such behavior; not affecting her ability to effectively teach; or any behavior that was found to not be criminal; would not reach the Defendants to be used in a manner that would deprive the Plaintiff of her protected property interest.

73. Under New York State Law; Executive Law Section 296(16) and Criminal Procedure Law Section 160.60 both recognized this constitutionally protected liberty interest and prevented the Defendants from using adverse information in a criminal proceeding (which was resolved in the Plaintiff's favor) against her in a later adverse proceeding. The use of information from the adverse proceeding was discriminatory and it caused the unfair termination of the Plaintiff's employment.

74. Defendants had available to them other remedies that were less severe to reprimand Plaintiff to address the finding that there was negative media coverage regarding the private dealings of her life. Those remedies included probation, suspension, and citation. Defendants choose termination because it had been seeking Plaintiff's termination years before and used this incident as a tactical advantage to justify terminating her employment, thus it has discriminated against Plaintiff.

75. Defendants have never cited or reported that the Plaintiff had been found to be incapable of teaching students in her classroom at any time during her tenured teaching history. They have never cited any parental or student complaint or policy that was violated by the Plaintiff, which would affect upon her ability to effectively teach or be impressionable upon students. They have not identified any public source or impact that the school district suffered because of the private behavior of the Plaintiff. Indeed, all findings have been to the contrary. Thus, Defendants have discriminated against Plaintiff for the sole purpose of terminating her employment because of a previous incident in which it was unable to secure her termination.

76. Defendant has used and made false accusations against the Plaintiff to support its decision to terminate her employment in violation of the law and which demonstrated its pattern of discrimination against the Plaintiff to achieve her termination.

77. The actual reason for the Defendant's adverse action in terminating Plaintiff was discrimination and to exact revenge on Plaintiff for succeeding in securing her employment in a prior proceeding at which Defendant strongly advocated for Plaintiff's termination, they did not succeed.

78. Defendants discriminated against Plaintiff by exacting revenge upon her through frivolous and arbitrary charges throughout the two years after Plaintiff succeeded in securing her employment at the manslaughter 3020(a) hearing. Many of those charges were found to be without merit and in certain cases to be false. Thus, the behavior of the Defendants in exacting revenge was discriminatory.

79. Defendants discriminated against plaintiff because it is clear that revenge was the purpose of securing the Plaintiff's termination. At the manslaughter hearing, Plaintiff's behavior was found to not warrant termination because Plaintiff could not be held liable for the dogs getting loose on the property and that her behavior did not rise to level of affecting her ability to teach in her classroom and be impressionable upon her students. Defendants disagreed and instituted a constant systematic attack designed to tactically achieve the Plaintiff's termination.

80. Because Plaintiff was only suspended without pay for a three month period at the manslaughter hearing, it is clear that Defendants had alternative remedies available to it that it could have imposed upon the Plaintiff for the less severe conduct of causing negative publicity to the district which emanated from a private life matter where Plaintiff was found to not be criminally liable. Defendants sought the most severe punishment because it was exacting revenge on Plaintiff after failing to secure her employment in what it viewed as a more serious act.

81. Revenge was the goal of the Defendants because they felt that the manslaughter award was not sufficient punishment. Each charge that it filed after that hearing and award sought termination for things such as absences and evidence submitted in support of validating sick day absences. Termination in these instances was also rejected.

Defendants continued focus on Plaintiff's private life behavior of the Plaintiff was viewed as the opportunity to finally achieve Plaintiff's termination. Defendants took discriminatory steps, acts, practices and prejudicial steps to achieve her termination.

82. Defendants have discriminated against the Plaintiff and exacted revenge by terminating her employment in a discriminatory practice because the Defendants are subjected to negative media coverage every day caused by the decisions of senior officials, yet none of those individuals were terminated even when they have a history of making controversial decisions. They have not treated her equally or fairly.

83. To bring the charges prior to the finality of the criminal proceeding was a deceptive tactic by the Defendants to circumvent the law, thus it cannot be shielded from violating a protected right no matter when they started the 3020(a) hearing.

84. The underlying conduct was dismissed with prejudice, The Defendants can't claim that dismissed conduct provided basis for termination, not only was due process violated because Plaintiff had a protected interest in her property right, but the Defendants violated the equal protection clause of the 14th Amendment as well.

85. Plaintiff was prejudiced because the Defendants began the proceedings prior to the criminal proceedings being finalized. The Collective Bargaining Agreement dated April 15, 2010, between the Board of Education (DOE) and The United Federation of Teachers (UFT) clearly states on page 2 paragraph 2
" **In the case of criminal charges, the employee notifies the DOE of the criminal disposition of the criminal pursuant to Chancellor's Regulations C-105, the DOE shall have 15 days to bring 3020a charges against the employee or return the employee to his or her prior assignment**".

86. Had the Defendants complied with The Collective Bargaining Agreement and waited until the criminal proceedings were complete, it would have had no basis on which to file the charges in the instant 3020(a) hearing. It filed the charges in order to preempt the law that would protect Plaintiff, therefore the Plaintiff was discriminated against.

87. Defendants should be held accountable for the discrimination it has committed against the Plaintiff.

88. Because of the discrimination against the Plaintiff, Plaintiff is entitled to punitive damages in the amount of $3.5 million and compensatory damages of $500,000.

89. In the alternative, Plaintiff should be immediately reinstated to her employment and compensated $250,000 for her loss wages and income, duress, and mental strain.

1. Plaintiff prays for this relief and any other relief that is deemed appropriate by this court. In the event that this court finds that the Plaintiff has not stated grounds on which relief may be granted, Plaintiff seeks the right to re amend.

2. On February 15, 2012, Plaintiff filed a verified Complaint with The New York State Division of Human Rights and on March 17, 2012 the NYSDHR dismissed Plaintiff's complaint for no probable cause.

3. On March 21, 2012, The Supreme Court of the State of New York (Hon. Philip Minardo) of Richmond County entered an order dismissing the appeal of the Decision of the Arbitrator and the NYSDHR's no probable cause findings.

4. On April 25, 2012, The United States Equal Employment Opportunity Commission dismissed Plaintiff's charges finding that the charge did not state a claim enforceable under statues by the EEOC.

5. On the same date immediately above the EEOC issued a right to sue letter.

WHEREFORE PLAINTIFF attests that the facts listed above are true and correct to the best of her knowledge and prays that the court grant the relief sought on the facts claimed above.

_____
Kim DePrima
PLAINTIFF

Dated this 6 Day of February, 2013

# **EXHIBITS TABLE OF CONTENTS**

**Exhibit A**..........2009 3020a Arbitrator Bonnie Siber Weinstock Opinion and Award

**Exhibit B**.........2010 3020a Hearing Officer Douglas S.Abel Opinion and Award

**Exhibit C**.........2011 3020a Hearing Officer Mary L. Crangle Opinion and Award

**Exhibit D**.........Transcript from Criminal Court Proceeding ( August 30, 2011)
**Exhibit E**..........Disposition from Criminal Charges and Probation Violation

**Exhibit F**......... TRI STATE, INC Interview and Statements from Jermaine Gavins, Wade Alston, and Lakeisha Dennis

**Exhibit G**...........Transcript of Jermaine Gavins and William Foster's testimony on August 8, 2011 @ 2011 3020a Proceeding

**Exhibit H**.........Letter from PO Suavez in regards to Probation Violation

**Exhibit I**...........Letter from Criminal Attorney Mike Ryan to ADA Cilia

**Exhibit J**.........Letter from Steve Didonato (therapist) and Dr. Rangaswamy (psychiatrist)

**Exhibit K**.........United Federation of Teachers/Department of Education Collective Bargaining Agreement