IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------X

KIM DEPRIMA,
    PLAINTIFF

vs.

                      Case Number: 1:12-cv-03626(MBK)-LB

CITY OF NEW YORK DEPARTMENT OF
EDUCATION,
    DEFENDANT.
------------------------------------------------X



PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW
IN SUPPORT OF HER OPPOSITION TO THE DEFENDANT'S MOTION TO DIMISS

                      Kim Deprima (PRO SE)
                      158 Willobrook Road
                      Staten Island, New York 10302

                      April 1, 2013

## ARGUMENTS

### I. PLAINTIFF'S DUE PROCESS, EQUAL PROTECTION, FIRST AMENDMENT AND NEW YORK HUMAN RIGHTS LAW CLAIMS ARE NOT BARRED BY COLLATERAL ESTOPPEL

The United States Court of Appeals for the Second Circuit has established guidelines and criteria that a District Court must examine in determining whether a Plaintiff has had a full and fair hearing. The criteria are (1) nature of the forum and importance of the claim in the prior litigation (2) the incentive and the initiative to litigate and the actual extent of the litigation (3) competence and expertise of counsel, (4) the availability of new evidence and (5) the difference in applicable law and the availability of future litigation. Johnson v. McClure 2009 WL 2356147 at 7 (N.D.N.Y. 2009) The primary basic issue the courts have recognized is that of fairness. Cruz v. Root 932 Supp. 66,68 (W.D.N.Y. 1996)

The Defendants argue that the Article 75 Hearing held in state court precludes the Plaintiff's arguments here, however the argument must fail. Although the state was the proper venue to challenge the findings of the Arbitrator in the 3020 (a) hearing that resulted in the Plaintiff's termination, the nature of the forum and the importance of the claim weighs heavily in favor of the Plaintiff. The State Court did not address the constitutional claims of the Plaintiff. The record indicates that the state court only made reference to the Plaintiff's constitutional claims. (Paragraph 2, page 2; State Opinion) Additionally, the litigation was not long, the court issued a three page opinion in which it only addressed one issue. The state court decided only whether the Arbitrator's witness credibility determination could be challenged and the basis for vacating the Arbitrator's award. In addition, the court's opinion in evaluating the Arbitrator's decision supports how important the claim is. In holding that, " The court is mindful that a finding of an Arbitrator is subject to closer judicial scrutiny under CPLR 7511(b) than it would otherwise receive when the obligation to arbitrate arises through a statutory mandate such as Education Section 3020(a)" (Powell v Board of Educ. of Westbury Union Free School Dist 91 AD3d 1012, 1013 (2009) illustrates that the constitutional claims of the Plaintiff should have been specifically addressed.

Furthermore, the Plaintiff was employed as a tenured teacher, she had a protected property interest in her employment and she properly pleads discrimination in the loss of her employment, and the violation of rights protected under the constitution. Her employment was her primary ability to earn for her dependents thus, she suffered a significant economic harm when she lost her employment; and, Plaintiff remains under threat from the Defendants to lose her professional license and certification as a specialized teacher. She had a very strong incentive and initiative to litigate although the litigation has been brief. This factor weighs heavily in her favor. Finally, the Second Circuit has determined that in order for a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding. Linden Airport Mgmt. Corp. v New York City Econ. Dev. Corp 2011 WL 2226625 at 6 (S.D.N.Y. 2011)

Also, the courts have held that unless such a strict standard is applied, a party could lose an opportunity to have an full and fair hearing on their claims. Granmorton Home Investors Corp. v. Lopez 46 NY 2d 481,485,414 NY NYS 2d 308, 311, 3865 NE 2d 1328 (1979)

Plaintiff raised several legal challenges to the decision of the Arbitrator under the protections of New York law and the federal constitution. The federal questions were raised properly in the state court, but they were not actually decided. The Plaintiff specifically challenged the Defendant's conduct of bringing actions against her based on conduct that she was not found guilty of under New York State Law. She challenged the validity of the proceeding pecisely because it had the effect of depriving her of due process because the conduct complained of by the Defendants was never prosecuted as criminal. She asked whether New York State law prevented the use of the conduct in achieving her termination. If the state court agreed, then due process under the 14th Amendment issues arise because the Arbitrator made credibility determinations that conflicted with actual hearing testimony; and which conflicted with the state prosecutor's decision to dismiss the case. In such a case, the Plaintiff's conduct was never found to be criminal. The state court never answered whether the Defendants were required to await the resolution of the criminal case under New York law (See N.Y.S. Exec. Law 296(16) and N.Y.S. Crim. Procedure Law 160.60) in order to afford the Plaintiff an opportunity to challenge such a finding. Although the issue was raised, it was not decided and if it was not properly raised, then this court can decide that issue because it was properly raised in the federal complaint. Due process is also implicated because if the Defendants were barred from using the challenged conduct for a finding to terminate, then she was deprived of a protected property right and the opportunity to challenge its use. Another central issue presented in the state court that was not decided was whether the records where required to be sealed under New York law so that the conduct could not be used in a later proceeding to deprive the Plaintiff of a protected property interest. The record is more than clear that these questions were fairly presented but not actually decided.

Plaintiff was not represented by counsel during the state phase of the case, she has proceeded pro se and is up against the Defendant's massive war chest and trained litigation lawyers. This court must view the filings of the Plaintiff in this case liberally and afford them the opportunity of raising the strongest arguments that they suggest. As such, given the limited litigation that has occurred thus far and the absence of experienced counsel, this factor weighs in the Plaintiff's favor. The Plaintiff is prepared to present evidence that supports her claims. This evidence includes post DOE research that demonstrates that other similarly situated teachers have remained in the employ of the Defendants. Plaintiff is also prepared to present evidence that specifically supports her claim of bias by the Arbitrator that lead to her termination. Specifically, Plaintiff is prepared to present evidence that in a number cases decided by the Arbitrator, the Arbitrator has consistently and routinely singled out certain types of behavior in which she was willing to allow teachers to continue in the employ of the Defendants, even though the behavior of those teachers had a serious and direct affect upon the teacher's ability to teach in the classroom. The Plaintiff is prepared to present evidence that the Defendants have consistently and routinely strategically sought the dismissal of teachers

whose behavior it believed was more criminally motivated than the dismissal of those who were actually found liable for endangering the welfare of students. Specifically 16 cases currently where the Defendants have allowed teachers who have been found or accused of sexual misconduct with students, yet they remain in the classroom. Plaintiff has never had so much as one complaint from a parent or school board official or superior where such conduct was complained of. While additional evidence is available, this fact weighs in favor of the Plaintiff.

The differences in applicable law and the foresee ability of future litigation also weighs in favor of the Plaintiff. Clearly New York State Executive Law Section 296 (16) and New York Criminal Procedure Law Section 160.60 have differences in their applicability here and the Plaintiff has raised questioned in the complaint that should be resolved even though both seek to achieve the same goal, protection of the Plaintiff from negative criminal proceedings that have been decided in her favor. Resolution of these questions are crucial to future litigation and therefore weighs in favor of the Plaintiff.

As a result, the Plaintiff has not presented issues that are identical to any that the state court necessarily and actually decided. She has presented fairly these issues before the court and has plead discrimination. The motion to dismiss should be denied.

## II. PLAINTIFF'S 3020(a) HEARING DOES NOT PRECLUDE HER CLAIMS HERE

The Defendants argue that the Plaintiff is precluded from bringing her claims because the 3020(a) hearing bars those claims. They argue that preclusive effect should be afforded because the 3020(a) hearing was an administrative adjudication. Roemer . Bd. of Educ. of the City of New York, 150 Fed. Appx. 38, 39 (2d Cir. 2005) The argument must fail. Although the Plaintiff was represented by counsel during the 3020(a) hearing she was limited in the issues that she could raise that the Arbitrator could decide. Plaintiff could not have had an opportunity to fully and fairly exhaust her claims in the 3020(a) hearing because the Arbitrator cannot rule on matters of state or federal law, thus it cannot resolve legal questions. Plaintiff presented her case within the confines of the administrative remedies provided under state law and under specific agreements in place with the Defendants to litigate against charges. Plaintiff has maintained that the hearing on the conduct was held in violation of the law because the very conduct that was the subject of the hearing arose from a criminal complaint that was later dismissed in its entirety. Under New York law, the Defendants should have been prevented from using the conduct to deprive Plaintiff of her protected property interest. The Plaintiff's due process claim persists not because she did not have an opportunity to respond, but because she should have never faced the hearing in the first place. Due process required an evaluation of the New York state law to determine whether those statues protected the Plaintiff from adverse action. The Defendants cannot have it both ways, if they seek protection from liability through preclusive effect, they cannot deny Plaintiff the benefit of equal protection that the law provided her under state provisions designed to keep conduct that she was found to not be criminally liable for out of a later adverse proceeding.

The Defendants have misjudged the Plaintiff's First Amendment claim. Plaintiff has never claimed that she engaged in speech that the Defendants were retaliating against her for. In order to survive a motion to dismiss, Plaintiff must show that (1) the conduct cited as the cause for retaliation is protected; (2) the defendant took adverse action; and (3) there was a causal connection between the protected conduct and the adverse action. Davis v. Goord 320 F. 3d 346, 352 (2d Cir. 2003) The conduct cited here was protected under New York State law, both provisions of the law required first that records be sealed from a criminal proceeding that was decided in the favor of the Plaintiff; and secondly that if criminal charges were resolved in Plaintiff's favor, then the conduct from that proceeding must be prevented from use in a later adverse proceeding. The finding by the Arbitrator that "the fact that the charges were dismissed does not mean that the conduct did not occur" is the precise type of finding that the state law was designed to protect against. There is no doubt that adverse action was taken, Plaintiff lost her employment. And finally the causal connection is clear. The conduct is the reason that the Arbitrator gave for terminating the Plaintiff's employment. In citing the conduct, the Arbitrator stated, "I cannot require the Respondents to assume the risk of having Plaintiff return to the classroom." Since the conduct was protected under state law and should be enforced under the due process of the federal constitution, the Defendant's motion to dismiss must be denied.

### III. PLAINTIFF HAS SUFFICIENTLY STATED AND PLEAD CLAIMS THAT ARE COGNIZABLE UNDER THE LAW

Defendants argue that the Plaintiff has not alleged claims properly under the federal statutes. The arguments are without merit and the motion to dismiss must be denied.

The Plaintiff's First Amendment argument is not based on speech, it is based on protected conduct. And the Plaintiff easily meets the burden of stating a claim on these merits in the Complaint. The Defendants argue that conduct which is analogous to criminal behavior is not constitutionally protected. Porter v. Goord, 2009 U.S. Dist. LEXIS 62865 at 21 (W.D.N.Y. 2009). The argument must be rejected, the conduct here was protected under state law from even being the subject of the 3020(a) hearing and it was never found to be criminal. Thus, if the Plaintiff was not found to have been guilty of criminal conduct, the Defendants cannot convert the conduct into criminal behavior in a Education Discipline hearing. The standard under New York State law is not a finding that the conduct occurred in order to prevent its use in a later adverse proceeding as the Arbitrator found. Rather, the standard is that if the criminal conduct is not found and charges are resolved in the Plaintiff's favor then the conduct is barred from use in a later adverse proceeding. The Defendant's cite of cases addressing criminal conduct are inapposite here and cannot control because there is no criminal conduct.

Plaintiff does not allege that the Defendants terminated her because of her manslaughter conviction as the Defendants incorrectly asserts. The Plaintiff claims that the Defendants engaged in a pattern of discriminatory behavior after the manslaughter conviction in order to secure here termination. An argument that the Plaintiff was terminated because

of the manslaughter conviction would be frivolous because Plaintiff was not terminated as a result of the manslaughter conviction. The complaint clearly and distinctly points out patterns of discriminatory behavior by the Defendants in the aftermath of the manslaughter conviction when the Plaintiff was able to secure her employment. Specifically, Plaintiff has pointed to several instances in the complaint when the Defendants continuously filed charges against her every year after that instance. It futher points out that the Defendants where even found by an independent Arbitrator to have falsely made claims against the Plaintiff in the numerous charges that it filed. The record is also clear that all but one of the numerous charges filed by the Defendants against the Plaintiff were dismissed. The charges persisted and Plaintiff has shown more than the requirement to survive a motion to dismiss.

Defendants argue that the due process claims should be dismissed because the Plaintiff was provided an opportunity to challenge the hearing officers findings in the Article 75 hearing. They argue that so long as the Plaintiff was provided by the State with an adequate post-deprivation remedy and that if she had a "meaningful post deprivation remedy that permitted her to appeal, then her claims must be dismissed because these processes were available. The argument cannot stand. The state remedy was not meaningful and it was not adequate because none of the legal questions which challenged the validity of the hearing itself were necessarily and actually decided. The Plaintiff has sufficiently alleged that due process prevented the conduct from ever being used to terminate her employment. Plaintiff certainly had a protected property interest in her employment because she was a tenured teacher. There is no doubt that she was deprived of that right by the Defendants. Therefore, they can only legitimately claim that the Plaintiff received due process if the court had actually decided the constitutional challenge to the hearing.

Even so, the Plaintiff may survive a motion to dismiss where she challenges the adequacy of the established state procedures themselves. Kriegsman v. New York City Transit Auth., 1988 U.S. Dist LEXIS 145621 1988 WL 138273 (E.D.N.Y. 1988) Furthermore the Second Circuit has stated "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. When deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post deprivation procedures will not ipso facto, satisfy due process." Hellenic Am Neighborhood Action Comm. v City of New York 101 f. 3d 877, 880 (2nd Cir. 1996) DeMasi v Benefico 567 F Supp 2d 449,455 (S.D.N.Y. 2008) Buonanotte v. Noonan 534 F. Supp. 2d 385, 392 (E.D.N.Y. 2008) Rivera-Powell v N.Y.C. Bd. of Elections 470 F.3d 458, 465 (2d Cir. 2006) Murawski v. Pataki 514 F. Supp. 2d 577, 585 (S.D.N.Y. 2007) Ridgeview Partners LLC v. Entwistle 354 F. Supp. 2d 395, 401 (S.D.N.Y. 2005)

Here, it is more than clear that the Plaintiff has challenged the established state procedures under New York State law in alleging that to have held the hearing based on conduct that was barred under New York state law, she was deprived of her right to due process because of the use of barred information in a later adverse hearing. Plaintiff

asked the state court to determine whether or not under New York state law the conduct was barred from use in the hearing, the state court did not do so. Had the information been barred as required under law, there may have been no hearing in which Plaintiff's protected property interest (her employment as a tenured teacher) would have been placed in jeopardy. More specifically, the Plaintiff could not have meaningfully challenged the Arbitrator's credibility determination any more successfully than she had when the witnesses testified that they had provided false statements to the police at the time of the alleged conduct in support of the criminal complaint. Given the statements of the witnesses that they had made false statements and refused to cooperate with the prosecution, the case was dismissed against Plaintiff, resolving it in her favor.

A determination after that by the Arbitrator that the conduct still occurred seriously undermined protections provided to Plaintiff under New York State law. As a result, the Plaintiff challenged the procedure and finding. The procedure was challenged in that the Plaintiff alleged that the 3020(a) hearing should not have commenced prior to the resolution of the criminal case because the hearing was based solely on that conduct. The Plaintiff could not seek the sealing of the records or an order barring its use under New York law until the criminal matter had been resolved. However, the 3020(a) hearing was proceeding simultaneously with the criminal proceeding, making it virtually impossible for the Plaintiff to secure the benefit of New York state law through a state order. However, the Arbitrator was well aware that the criminal charges had been dismissed resolving the case in the Plaintiff's favor, as a result the protections of New York law applied to Plaintiff. The procedure that was used by the Defendants and the Arbitrator was a tactical systematic decision designed solely to deprive Plaintiff of her employment.

The Plaintiff has met her burden of demonstrating that she had a protected property interest, that she suffered an adverse action and that she has plead specific enough circumstances that give rise to an inference of discrimination. Norville v Staten Island Univ. Hosp. 196, f3d. 89, 95 (2d Cir. 1995). That burden is minimal in the Second Circuit and it is met overwhelmingly here.

Defendants next argue that the Plaintiff cannot demonstrate an equal protection claim plausible on its face. They argue that the Plaintiff has a criminal history and therefore does not belong to a protected class. This argument must fail as a matter of law. In order to prove a violation of the Equal Protection Clause, "a plaintiff must demonstrate that he was treated differently than others similarly situated as result of intentional and purposeful discrimination." Phipps v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) "In order to survive a motion to dismiss, the plaintiff must specify the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of discriminatory intent." Yusuf, 35 F.3d 713 "A plaintiff must allege purposeful and systematic discrimination by specifying instances in which the Plaintiff was singled out for unlawful oppression in contrast to others similarly situated." Albert v. Carovano, 851 F.2d 561, 573 (2d Cir. 1988)

First, the Plaintiff was a tenured teacher at the time of her termination and tenured teachers have a constitutionally protected property interest in the continuation of their

employment. Harhay v. Town of Ellington Bd. of Educ. 323 F. 3d 201, 212-13 (2d Cir. 2003) The Second Circuit has consistently held that "tenured public employees have a constitutionally protected property interest in their employment." Banigo . bd. of Educ. of Roosevelt Union Free Sch. Dist. 2009 U.S. Dist. LEXIS 19009, 2009 WL 577974 at 9 (E.D.N.Y. 2009); Ciambriello v. County of Nassau, 292 F.3d 307, 313-14 (2d Cir. 2002); Hawkins v. Steingut 829 F.2d 317, 321 (2d Cir. 1987) Therefore, plaintiff clearly belongs to a protected class.

Second, Plaintiff has specifically alleged that she was treated differently than others similarly situated and that the treatment was deliberate and intentional such that she was discriminated against. Plaintiff has identified at least 16 currently employed tenured teachers who are currently under criminal investigation or have been punished for conduct that has been found to not be impressionable upon students or which has been found to physically harm students, nearly all of that conduct has been found in the context of sexual misconduct or other possible criminal acts against children in the classroom. Rather than be fired, these teachers have either been reassigned to other schools or centers, but they have not been relieved of their responsibilities. Plaintiff was not even found guilty of the conduct cited as the purpose for her termination. She has never been brought up on charges that endangered the life or well being of her students. Indeed, all Arbitrators repeatedly found that the Plaintiff's behavior in the classroom never warranted termination. Yet, the Defendants wanted her terminated when in fact it has several teachers currently employed for conduct that includes the improper touching of young girls in the classroom; illegal sexual relationships with students; and numerous claims of inappropriate contact with children. And although these charges and allegations directly impacts upon these teachers ability to be impressionable upon their students they remain in the employ of the Defendants.

Finally, plaintiff has alleged purposeful and systematic discrimination by specifically alleging instances in which the Defendants singled her out for unlawful oppression than others similarly situated. Plaintiff alleges in the complaint, that the Defendants were not satisfied that she was able to secure her employment after the manslaughter hearing. Defendants took specific steps that were designed to achieve the Plaintiff's termination. Very shortly after the Plaintiff had secured her employment, Defendants then undertook to begin making consistent and continual arbitrary and capricious charges against the Plaintiff. More specifically, they filed numerous charges against Plaintiff that included fraud and falsifying documents. In each of these cases, the Plaintiff was found to not be responsible and the Defendants were found to have leveled unsubstantiated charges against the Plaintiff.

The pattern continued as the Defendants did not let up. The Defendants continued this pattern of behavior by systematically holding a hearing simultaneously with a criminal investigation so as to avoid having to justify terminating Plaintiff based on conduct that she would be later not be held liable for. Additionally, the Plaintiff has specifically alleged that the Arbitrator was biased in favor of the Defendants in this case. The Arbitrator has become known to allow tenured teachers who have committed serious sexual misconduct with children or who are being investigated for such conduct to

continue in the employ of the Defendants. This has placed the welfare and safety of school children in serious jeopardy, yet the Arbitrator here, used conduct that was protected under the law to grant Defendants request to terminate. That decision being made in the face of a long history by the Plaintiff of never having been charged with sexual misconduct or ever placing the welfare of her students at stake. Furthermore, the Plaintiff is prepared to offer additional evidence that the Defendants singled her out because teachers with similar or more serious conduct for which they have been found liable have been placed in what the Defendant's have termed for years "rubber rooms."

Although the Defendants had available to them much less severe punishment, they choose to terminate Plaintiff based on a deliberate, systematic basis designed to achieve her termination.

Plaintiff has not claimed that her criminal history is protected under the 14 Amendment as the Defendants have incorrectly asserted. Her right in the property interest that she had in her employment as a tenured teacher was protected and the
Plaintiff has alleged that she was deprived of this right protected by the constitution. The fact that Plaintiff had a criminal history had been established at the manslaughter hearing in which she was able to secure her employment. Because her employment was continued after that fact, her right in her employment continued. Her rights and protection in that right did not cease because she had a criminal history.

Furthermore, Plaintiff has never claimed that her arrest was protected under the constitution or under New York law as the Defendants have incorrectly asserted. The arrest was merely a part of the criminal process, Plaintiff's position alleges that the conduct that caused the arrest was protected under New York law. Additionally, the Collective Bargaining Agreement (dated April 15, 2010) between the Board of Education (DOE/Defendants) and the The United Federation of Teachers (UFT) clearly requires that a 3020(a) hearing await the resolution of criminal charges. The agreement holds: "In the case of criminal charges, the employee shall notify the DOE of the criminal disposition of the criminal charges pursuant to Chancellor's Regulations C-105; the DOE shall have 15 days to bring 3020(a) charges against the employee or return the employee to his or her prior assignment." The Defendants did not adhere to this procedure, but instead held the hearing simultaneously with the criminal proceeding. As such, plaintiff was deprived of due process. The record should have been sealed and not available to be used against Plaintiff in a later adverse proceeding. On these points, the Defendants motion to dismiss must be denied.

The Defendants next argue that the Plaintiff has not sufficiently stated or alleged claims cognizable under Title VII. To establish a prima facie case under Title VII, the Plaintiff must show that (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action;(4) the action occurred under circumstances giving rise to an inference of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. ed. 2d
668 (1973) St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S. ct. 2742, 125 L. Ed. 2d 407 (1993) Bickerstaff v. Vassar

College, 196, F.3d 435, 446-47 (2d Cir. 1999) Norville v Staten Island Univ. Hosp. 196, F3d. 89, 95 (2d Cir. 1999)

It has been well established that the Plaintiff is indeed a member of a protected class as a tenured teacher because that status was created by "state law- rules or understandings that secure certain benefits and that supports claims of entitlement to those benefits." Bd. of Regents v. Roth, 408, U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972)
There is no doubt that the Plaintiff was qualified for her position, she is college educated, board certified and holds a
two teaching certificates and held her teaching position for over 10 years. The Plaintiff has suffered an adverse action because she was terminated from her employment by the Defendants. Thus the Plaintiff easily meets the first three criteria laid out in the McDonnell analysis.

In the complaint, Plaintiff more than satisfies the final requirement. The burden of establishing a prima facie case is not an onerous one. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed 2d 207 (1981)
There are several circumstances that the Plaintiff has alleged that gives rise to an inference of discrimination. Plaintiff need not prove discrimination at this stage, only that it is inferred. Here she has met that minimal task. Plaintiff has alleged that she was singled out and consistently and continuously targeted by the Plaintiff by having numerous charges filed against her over a three year period. These charges were unsubstantiated. There have been numerous teachers who have been found guilty of or under investigation for, sexual misconduct with students and remain in the employ of the Defendants. (Plainiff has identified at least 16 current cases which will support her claim. These cases are specific to the case at hand and have been noted earlier in this response.) While Plaintiff's conduct complained of was dismissed in a court of competent jurisdiction, she was terminated.

Plaintiff was forced to respond to a systematic and deliberate tactical advantage designed by the Defendants to achieve her termination even where information used was barred under state law. She had to defend against charges that she had not
been found guilty of and which should never have been allowed in the hearing. Plaintiff was subject to the findings of an Arbitrator with a history of bias towards certain type of behavior in which she would grant termination in some cases but not
in others where the conduct was most severe and endangered the welfare of students. The complaint is replete with allegations sufficient enough to withstand the motion to dismiss on the standard that has been laid out. The Defendant's motion to dismiss must be denied.

## IV. THIS COURT DOES NOT LACK JURISDICTION OVER THE PLAINTIFF'S CLAIMS

The Defendants argue that the Court lacks jurisdiction over Plaintiff's claims because she elected to present her claims to the New York State Division of Human Rights and thus her claims are barred. The Court has jurisdiction for the
following reasons. As the Plaintiff has argued, she presented her claims to the New York

State Supreme Court because it was the only mechanism to challenge both the Hearing Officer's decision and the finding of the NYSDHR that there was no
probable cause. Hunt v. Klein, 2011 U.S. Dist. LEXIS 14918 at 7 (S.D.N.Y. 2011); In re Czosek, 71 A.D. 3d 1359, 900 N.Y.S. 2d 154, 156 (N.Y. App. Div. 2010) Plaintiff followed this course of action because it was prescribed under the law. This court
is not barred from exercising supplemental or pendent jurisdiction over state claims where the Plaintiff has argued that she was denied a full and fair hearing in a previous court because her claims were not necessarily and actually decided. Johnson
v. McClure 2009 WL 2353147 at 7 (N.D.N.Y. 2009); Cruz v. Root 932 F. Supp. 66, 68 (W.D.N.Y. 1996) The Plaintiff presents her claims in this court on the grounds that she has demonstrated that the challenges to the procedure and process under New York State law and the federal constitution have not been actually decided. Linden Airport Mgmt. Corp. New York City Econ. Dev. Corp. 2011 WL 2226625 at 6 (S.D.N.Y. 2011)
Additionally, the Plaintiff presents claims in the complaint that
are different than those raised in the previous court under other federal statues, namely Title 42 of the United States Code, Section 1983 and Title VII of the Civil Rights Act of 1964. The Plaintiff's claims also arise out of the federal constitution, specifically the 14th Amendment due process and equal protection clauses. Because the Plaintiff has raised sufficient federal questions, it is axiomatic that this court has original jurisdiction.

Lastly, the Plaintiff is pro se, "however in artfully pleaded, (her complaint) must be held to less stringent standards than formal pleadings drafted by lawyers." Boykin v. Key-Corp, 521 F.3d 202, 214 (2d Cir. 2008) So long as the complaint "states a claim to relief that is plausible on its face," this court must accept as true all of the allegations contained in the complaint." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010); Mancuso v. Hynes, 379 Fed. Appx. 60, 61 (2d Cir. 2010) Here, the court, in giving the Plaintiff's complaint a liberal and generous construction and reading it to suggest the strongest argument that it suggests would find that the Plaintiff has presented claims that this court has original jurisdictional over and there is a strong case for the court to exercise supplemental and pendant jurisdiction.

## CONCLUSION

For the reasons set forth herein, Plaintiff Kim Deprima, respectfully request that the Defendants, New York City Department of Education's motion to dismiss be denied, that discovery should be ordered, and that a trial date should be set on the allegations in the complaint and that no fees or costs be granted, together with any and all such other relief as this Court deems appropriate.

Dated: Staten Island, New York
April 1, 2013

Kim Deprima

CC - Benjamin Welikson