UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT E.D.N.Y.

★ JAN 1 5 2014 ★

BROOKLYN OFFICE

------------------------------------------------------------X
KIM DEPRIMA,

                Plaintiff,

    -against-

CITY OF NEW YORK DEPARTMENT OF
EDUCATION,

                Defendant.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION
12 CV 3626 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

    Plaintiff, Kim DePrima, a former tenured New York City public school teacher for 15

years, brings this *pro se* civil rights and employment discrimination action challenging her

termination. She alleges defendant violated her Constitutional rights to Equal Protection, Due

Process, and Freedom of Speech or Association, as well her rights under New York Human

Rights law, by firing her. Defendant moves to dismiss plaintiff's Second Amended Complaint

pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The Honorable

Margo K. Brodie referred defendant's motion to me for a Report and Recommendation in

accordance with 28 U.S.C. § 636(b). For the following reasons, I recommend that defendant's

motion to dismiss plaintiff's Second Amended Complaint should be granted.

## BACKGROUND

    Plaintiff was a tenured special education teacher who worked for defendant from 1996

until her termination in 2011. The crux of plaintiff's Second Amended Complaint is that her

termination was based on prohibited grounds: dismissed and sealed criminal charges regarding a

shooting incident in 2011. However, since plaintiff also complains that defendant terminated her

to avenge having lost two prior disciplinary hearings brought against her – a motive which

1

plaintiff characterizes as discriminatory – the Court recounts events dating back to 2009.

On February 25, 2009, plaintiff pled guilty to Manslaughter in the Second Degree when two pit bulls under her care escaped and mauled her 90-year-old neighbor ultimately killing him. (Second Amended Compl., Ex. A at 4-6, ECF No. 15.) Defendant brought disciplinary charges against plaintiff pursuant to Section 3020-a of the New York State Education Law, which establishes a tenured teacher's right to an impartial hearing ("3020-a hearing").[1] The impartial hearing officer ("IHO") found plaintiff's conduct to be "unbecoming a professional" and suspended her without pay for three months. (Id. at 7-8, 24.) The following year, defendant sought to terminate plaintiff on the grounds that she took sick leave to attend criminal court proceedings. (Second Amended Compl., Ex. B at 13-21.) The IHO dismissed all charges except one and fined plaintiff $500 to deter future misconduct. (Id. at 23.)

In January 2011, criminal charges were filed against plaintiff for allegedly threatening her ex-boyfriend, Jermain Gavins, together and in concert with Shawn Hicks, who fired gun shots into Gavins's apartment. Gavins's statement to the police read:

> At or about 9 PM on [January 7, 2011] I was awaken from my sleep by someone pounding on my door. I answered and an unidentifiable guy tells me Kim [plaintiff, herein] brought him to speak To me. While conversating with this guy Hicks comes out of [apt] 59b and askes 'Wat I wanna do" I then returned to my apartment and called 911. The police arrived promptly and took a statement as the officers are pulling away Hicks comes back out of the next door apt-59b and pulls a black pistol from his hoody pocket Hicks teels me "them niggas gone now what" I told him to shoot. Kim comes out of the next door apartment, leans over the rail and states "I told you you are dead mother fucker" My mother hears this and comes to the door so I push my mother away from the door close and lock it and call 911. As Im on the phone with the operator shoot come through my doors. I crept to the window to look out and I seen Kim driving Hick in the passengers' headed down toward Richmond Terrace.

(Second Amended Compl., Ex. C at 13-14 (spelling and punctuation as in original).)

---

[1] "Section 3020-a lays out extensive litigation procedures for hearings, including motion practice, bills of particulars, mandatory disclosure, discovery, subpoena power, right to counsel, cross-examination, testimony under oath, and a full record." Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist., 411 F.3d 306, 312 (2d Cir. 2005)

Defendant suspended plaintiff without pay and instituted a disciplinary action against her. Asserting that plaintiff's involvement in the shooting incident and the ensuing negative publicity constituted, *inter alia*, neglect of duty, criminal conduct, negative notoriety, conduct unbecoming plaintiff's position or prejudicial to the good order, efficiency, or discipline of the service, and substantial cause rendering plaintiff unfit to perform properly her obligations to the service, defendant sought plaintiff's termination for the third time.

An IHO held hearings and took testimony from plaintiff, Gavins, Hicks, and Gavins's stepfather, on eight separate days. (Second Amended Compl., Ex. C at 1-2.) On August 30, 2011, prior to the completion of the IHO hearings, all criminal charges against plaintiff arising from the shooting incident were dismissed with prejudice. According to transcripts attached to plaintiff's Second Amended Complaint, the Assistant District Attorney stated that "[s]ince initially presenting this case to the Grand Jury, the complainant [Gavins] has gone from claiming he did not wish to testify against Kim DePrima to recanting the positions of his original allegations against DePrima" and that as a result there was "insufficient evidence to move forward against [her]." (Second Amended Compl., Ex. D at 2.)[2] After the charges were dismissed, the record of the proceeding was sealed pursuant to New York Criminal Procedure Law Section 160.50 ("Section 160.50").[3] (Id.)

Notwithstanding the dismissal of the criminal charges, plaintiff's termination hearings

---

[2] The Grand Jury voted to indict Hicks but voted "no action" as to plaintiff. Hicks pled guilty and did not implicate plaintiff in his allocution. (Second Amended Compl., Ex. D at 2.) The People moved to dismiss the charges against plaintiff based on the complainant's refusal to testify and his "recanting the positions of his original allegations against DePrima." (Id.) A Grand Jury's vote of "no action" is not tantamount to a vote of "no true bill." People v. Aarons, 2 N.Y.3d 547, 550 (2004); see also People v. Gordon, 823 N.Y.S.2d 840, 842 (Sup. Ct. Kings County 2006) ("the failure of a grand jury panel to obtain at least twelve votes to indict or twelve votes to dismiss a charge is not the equivalent of a 'no true bill'").

[3] N.Y. Crim. Proc. Law § 160.50 provides that "[u]pon the termination of a criminal action or proceeding against a person in favor of such person ... the record of such action or proceeding shall be sealed ... ."

3

continued on September 13 and September 23, 2011. (Second Amended Compl., Ex. C at 2.) On November 11, 2011, the IHO rendered a 33-page decision which found plaintiff's testimony that the shooter acted alone and then forced her at gunpoint to drive him away to be incredible. (Id. at 16-18.) Noting that the ex-boyfriend's 911 call at the time of the shooting incriminated plaintiff, and her ability to assess his demeanor on the witness stand before her, the IHO determined that the ex-boyfriend's recantation was similarly incredible. (Id. at 9, 22 n.14.) The IHO emphasized that the dismissal of the criminal charges did not preclude her findings, citing the higher burden of proof in a criminal trial. She found it more likely than not that plaintiff brought the shooter to intimidate her ex-boyfriend, joined in the threats by stating in substance, "I told you that you was dead," and then drove the shooter away. (Id. at 19-22.) The IHO also cited the significant negative publicity concerning the events of January 7, 2011 and the fact that plaintiff was a teacher in the New York City School system. (Id. at 24.)

As a result of her findings, the IHO terminated plaintiff on the grounds that she engaged in conduct unbecoming her profession as a teacher. According to the IHO, termination was appropriate because plaintiff had "shown such an astounding lack of good judgment by her involvement in the events of January 7, 2011 that I find she can no longer be trusted to exercise the type of judgment required of teachers working with students in New York City Schools" and that "[h]er behavior was such that I cannot require the Department of Education to assume the risk that, in the future, [plaintiff] could engage in conduct which would jeopardize the well being of students entrusted to her care." (Id. at 29.)

Plaintiff filed a petition under New York C.P.L.R. Article 75 to vacate the IHO's decision. (Decl. of Benjamin Welikson in Supp. of Def.'s Mot. to Dismiss ("Welikson Decl."), Ex. 3, ECF No. 20-3.) The state court judge, Judge Philip G. Minardo, found plaintiff's petition

raised "numerous grounds including New York State Human Rights Law Section 296.16 and ...
[the 14th Amendment's equal protection clause]" for vacating the IHO decision but that
plaintiff's petition "primarily" asserted that the arbitrator should be "precluded from using any
information" from the criminal proceeding as the criminal charges against her were dismissed
and sealed. (Id. at 2.)  Plaintiff also claimed the IHO decision was arbitrary because Gavins
recanted his testimony and she had nothing to do with the shooting.  In denying plaintiff's
Article 75 petition, Judge Minardo held:

> However, the court finds no rational basis to overturn the determinations made by the
> arbitrator with regard to the credibility of the witnesses (citation omitted).  Therefore,
> [plaintiff] has failed to demonstrate that the arbitrator's decision was not supported by the
> evidence and/or that it was arbitrary or capricious.

(Id. at 3.)

After filing an administrative complaint with the New York State Division of Human
Rights ("NYSDHR"), which was also denied, plaintiff filed the instant action.  From the 86
paragraphs under the heading "Causes of Action" in her Seconded Amended Complaint, it is
clear that plaintiff believes that the IHO's decision was unfair, that she was a good and effective
teacher, and that the events on January 7, 2011 had nothing to do with her job as a teacher.  She
challenges her termination on the grounds that defendant (1) discriminated against her on the
basis of the sealed criminal charges and her prior disciplinary history in violation of the Equal
Protection clause of the Fourteenth Amendment,[4] (2) deprived her of property without due

---

[4]  Second Amended Compl. ¶¶ 3 "[d]efendants discriminated against plaintiff and sought her termination in two
prior 3020(a) hearings... [o]n the third attempt, the [d]efendants unlawfully and wrongfully obtained [p]laintiff's
termination"); 7 ("Defendants have discriminated against plaintiff because after its prior attempts to terminate her
were rebuffed by independent arbitrators, Defendants continued to file arbitrary and capricious charges against
Plaintiff until it reached her termination"); 12-13 (defendant did not "treat plaintiff equally and fairly under the law
as is required by the 14th Amendment" because it did not wait for "the resolution of criminal allegations"); 18 (if
plaintiff had not "been the subject of a prior 3020(a) hearing that involved manslaughter, Defendants would not have
consistently sought her termination"); 19 (defendant "discriminated against plaintiff because the alleged conduct ...
was later denied by the alleged participants" and "such a denial implicated the 14th Amendment's equal protection
clause"); 26-28 ("Defendants showed a pattern of discrimination against the Plaintiff by seeking to terminate

process,[5] (3) violated New York Human Rights Law Section 296(16),[6] (4) violated her First Amendment rights by firing her for "the private dealings of her life,"[7] and (5) violated Title VII, 42 U.S.C. 2000(e) *et seq.*[8]  Plaintiff seeks immediate reinstatement, as well as compensatory and punitive damages.  (Second Amended Compl. ¶¶ 88-89.)

Defendant moves to dismiss on the grounds that plaintiff's claims are barred by collateral estoppel.  Defendant also moves on the grounds that plaintiff fails to state a claim that defendant violated her rights based on Equal Protection, Due Process, First Amendment, or under Title VII.

---

plaintiff specifically for conduct that would not have been pursued toward a vast majority of other tenured teachers"); 30 ("Plaintiff never received an unsatisfactory report by superiors prior to her termination"); 34 ("Defendants have shown a pattern of discrimination and concerted, deliberate, and planned effort to terminate Plaintiff's employment" as demonstrated by two arbitrators who "found that Defendants[;] request for termination ... were not warranted"); 58 (there was no evidence that plaintiff was "unfit to teach"); 62 (arbitrator's findings were "clearly at odds with the history of the Plaintiff's performance"); and, 78-81("Revenge was the goal of the Defendants because they felt the manslaughter award was not sufficient punishment").

[5] Id. ¶¶ 21 (defendant "deprived Plaintiff of a right to a fair hearing that excludes information and alleged conduct that is barred by law when it circumvented the legal process and preempted the court's findings and order that the criminal allegations be dismissed for the sole and only purpose of terminating Plaintiff's employment"); 83 ("To bring charges prior to the finality of the criminal proceeding was a deceptive tactic by the defendants to circumvent the law"); and, 84 ("The underlying conduct was dismissed with prejudice.  The Defendants can't claim that dismissed conduct provided the basis for termination ... due process [was] violated").

[6] Id. ¶¶ 2, 8, 9, 10, 14, 16 17, 20, 48-48, 85.  New York Executive Law § 296.16 states:

> It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, ... in connection with the licensing, employment, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, ... .

New York Exec. Law § 296.

[7] Id. ¶ 72 ("Plaintiff enjoyed a protected liberty interest in the private dealings of her life under the First Amendment so that any such behavior; not affecting her ability to effectively teach or any behavior that was found not to be criminal; would not reach the Defendants to be used in a manner that would deprive the Plaintiff of her protected property interest.")

[8] Id. at 1 ("This action also arises under Title VII of the Civil Rights Act of 1964 because the defendants intentionally discriminated against plaintiff.")

Finally, defendant argues that the Court lacks jurisdiction over plaintiff's New York Human Rights Law claim because it is barred by plaintiff's election of remedies. (Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 21.) Plaintiff has opposed the motion to dismiss and defendant has filed a reply. (ECF Nos. 18, 22.)

## STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Iqbal, 566 U.S. at 679. Nonetheless, "[w]here, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments [it] suggest[s]. Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks omitted); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations omitted) (internal quotation marks omitted)).

In evaluating a motion to dismiss, the Court may consider documents attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken without converting the motion into one for summary judgment. Chambers, 282 F.3d at 152-153. Thus, the Court here considers and takes judicial

7

notice of the related actions brought by plaintiff before the NYSDHR and New York State court.[9] See Johnson v. Pugh, 11-CV-385 (RRM)(MDG), 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may take judicial notice of . . . decisions in prior state court adjudications, on a motion pursuant to Rule 12(b)(6).")[10]; Volpe v. Nassau Cnty., 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013) (taking judicial notice of plaintiff's NYSDHR complaint and the NYSDHR decision on defendant's motion to dismiss). The Court takes judicial notice of these decisions to "'establish the fact of such litigation and related filings,'" not for the truth of the matters therein asserted. Johnson v. Levy, 812 F. Supp. 2d. 167, 176-77 (E.D.N.Y. 2011) (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. Also, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), we may refer to evidence outside the pleadings." McKithen v. Brown, 481 F.3d 89, 95 (2d Cir. 2007) (citing Makarova, 201 F.3d at 113).

---

[9] Plaintiff's Second Amended Complaint attaches the three IHO Opinions and Awards from 2009, 2010, and 2011; the transcript from plaintiff's criminal court proceeding; the certificate of disposition in plaintiff's manslaughter conviction, letters from plaintiff's criminal defense attorney; a transcript of plaintiff's August 8, 2011 IHO hearing; a letter from plaintiff's probation officer to the defendant stating that plaintiff was placed on violation status based solely on her January 7, 2011 arrest but that she would be taken off violation status "if the re arrest is terminated;" a letter from a health facility; and a copy of the Collective Bargaining Agreement between defendant and the United Federation of Teachers. (Second Amended Complaint, Exhibits A-K.) Defendant provided plaintiff with the requisite Local Rule 12.1 Notice to Pro Se Litigant Opposing Motion to Dismiss and attached to its motion to dismiss plaintiff's Article 75 petition, plaintiff's opposition to defendant's cross-motion to dismiss plaintiff's Article 75 petition, Judge Minardo's Decision and Order denying plaintiff's Article 75 petition, a copy of plaintiff's NYSDHR administrative complaint, and the NYSDHR Determination and Order After Investigation. (Welikson Decl. Ex. 1-5.)

[10] The Clerk of Court is directed to send plaintiff the attached copies of the unreported cases cited herein.

## DISCUSSION

I.      Collateral Estoppel

"The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion 'is

that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a

prior action may not be relitigated in a subsequent suit between the parties or their privies.'" Ali

v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (quoting United States v. Alcan Aluminum Corp.,

990 F.3d 711, 718-19 (2d Cir. 1993)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322,

326 n.5 (1979) ("Under the doctrine of collateral estoppel . . . the judgment in the prior suit

precludes relitigation of issues actually litigated and necessary to the outcome of the first

action."). Collateral estoppel bars relitigation of an issue "when (1) the identical issue

necessarily was decided in the prior action and is decisive of the present action, and (2) the party

to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in

the prior action." Denton v. Hyman, 502 F.3d 61, 65 (2d Cir. 2007) (citing Kaufman v. Eli Lilly

& Co., 482 N.E.2d 63, 67 (N.Y. 1985)); accord Curry v. City of Syracuse, 316 F.3d 324, 331 (2d

Cir. 2003). "The 'identical issue necessarily decided' requirement under New York law

comprises two parts: (1) the issues of both proceedings must be identical, and (2) the issue must

have been raised, necessarily decided, and material to the first action."

Matusick v. Erie Cnty. Water Auth., -- F.3d -- , 2014 WL 30694, at *39 n.9 (2d Cir. Jan. 6,

2014)(citation omitted). Under New York law, "[t]he party seeking to invoke the doctrine bears

the burden of establishing its applicability." Tracy v. Freshwater, 623 F.3d 90, 99 (2d Cir. 2010)

(citing Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006)).

### A. Plaintiff's Article 75 Proceeding

Defendant claims that plaintiff's Article 75 proceeding bars plaintiff's Due Process, Equal Protection, and New York Human Rights law claims. However, defendant fails to demonstrate that all of these claims were necessarily decided by the state court in the Article 75 proceeding.

Judge Minardo recognized that plaintiff challenged her termination on the grounds that it violated New York Human Rights Law Section 296(16) and the Constitution, but the holding of his decision is narrow. He found "no rational basis to overturn the determinations made by the arbitrator with regard to the *credibility* of the witnesses" (emphasis added) and that "[t]herefore, [plaintiff] has failed to demonstrate that the arbitrator's decision was not supported by the evidence and/ or that it was arbitrary or capricious." A finding that the 3020-a decision was not arbitrary or capricious "does not lead inexorably to the conclusion" that the alleged discriminatory animus "was not a motivating factor in the [defendant's] decision to terminate" her. Vargas v. City of New York, 377 F.3d 200, 207 (2d Cir. 2004). See also Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 472 (S.D.N.Y. 2011)("Even if Plaintiff cannot dispute the factual findings of the Hearing Officer's decision, Plaintiff can still prevail if he shows that Defendants acted with an improper motive in bringing charges against Plaintiff.") He also did not decide the preliminary question of whether it was unconstitutional to consider the charges and evidence in the first place, as opposed to whether testimony, once admitted, was credible. Therefore, contrary to defendant's assertion, Judge Minardo's decision did not "subsume" the crux of plaintiff's claims that the Constitution prohibited consideration of the

dismissed charges and that it was discriminatory under the New York Human Rights law to consider this evidence. [11]

In contrast, the state court did decide plaintiff's Equal Protection claims. As an initial matter, there is no dispute that plaintiff raised the same Equal Protection claims in her Article 75 proceeding as she raises in her instant Second Amended Complaint. Where, as here, plaintiff's Equal Protection claims are not based on a protected status, see infra at 14-15, the "disparate treatment of which she complained needed only a rational basis in law to be upheld." Vargas, 377 F.3d at 206 (citing Heller v. Doe, 509 U.S. 312, 320 (1993)). Judge Minardo's decision that the 3020-a decision was supported by the evidence and was not arbitrary or capricious, is "essentially a finding that it was rational." Id. at 207. Accordingly, plaintiff's Equal Protection claim was necessarily decided in the prior action.[12]

Plaintiff claims she did not have a full and fair opportunity to litigate this issue. In order to assess whether plaintiff had a full and fair opportunity to litigate the issue in the prior action, the Court must consider, inter alia, "the size of the claim, the forum of the prior litigation, the

[11] The defendant's cite to Dolan v. Roth, 170 Fed. Appx. 743, 2006 WL 558578 (2d Cir. 2006) is not controlling here. In that case, the state court found plaintiff's dismissal was "fully in accordance with the law," supported "by a rational basis," and that any remaining contentions were "without merit." Id. at *746. Thus, the state court's decision in Dolan was much broader than Judge Minardo's decision in this case.

[12] For the same reason, any claim that the 3020-a decision was arbitrary and capricious should be dismissed as barred by collateral estoppel. Plaintiff is also precluded from challenging the factual findings of the IHO. See Matusick, 2014 WL 30694, at *12 (plaintiff was precluded from challenging factual findings of administrative determination). In addition, to the extent plaintiff alleges defendant violated provisions of the collective bargaining agreement ("CBA") with her union, she lacks standing to raise this claim. The CBA is a contract between the teachers' union and defendant. While the union can raise claims that the CBA was violated, "[u]nless there is a breach of the duty of fair representation, an individual union member normally lacks standing to enforce the terms of a collective bargaining agreement between the union and the employer. U.S. v. Brennan, 650 F.3d 65, 123 (2d Cir. 2011)(internal quotation marks and citation omitted). See also Hunt v. Klein, 476 Fed.Appx. 889, 891, 2012 WL 1292717, at *1 (2d Cir. 2012) ("The district court properly concluded that [plaintiff] lacked standing to assert individual claims on the basis of alleged violations of the collective bargaining agreement between his union and the New York City Department of Education.") Even though defendant does not address this potential claim, the Court should dismiss it sua sponte. Centr. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised sua sponte.").

use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." King v. Fox, 418 F.3d 121, 130 (2d Cir. 2005)(citation and internal quotation marks omitted). Plaintiff admits that she had "a very strong incentive and initiative to litigate" her Article 75 petition because her livelihood was at stake, but claims that collateral estoppel should not apply because she was not represented in state court and she has evidence including "post DOE research that demonstrates that other similarly situated teachers have remained in the employ of the Defendants." (Opp'n at 3, ECF No. 18.)

However, the mere "fact that [p]laintiff proceeded *pro se* does not alter the preclusive effect of the state court judgment." Fertig v. HRA Medical Assistance Program, No. 10 CV 8191(RPP), 2011 WL 1795235, at *4 (S.D.N.Y. May 6, 2011) (granting motion to dismiss). See also Goodson v. Sedlack, 212 F. Supp. 2d 255, 258 (S.D.N.Y. 2002)("the mere fact that the plaintiff proceeded *pro se* does not sufficiently establish that he was denied a full and fair opportunity to be heard"). In addition, plaintiff's new evidence which allegedly includes "16 cases currently where the Defendants have allowed teachers who have been found or accused of sexual misconduct with students, [to] remain in the classroom" is not the type of "significant new evidence uncovered subsequent to the proceeding," Khandhar v. Elfenbein, 943 F.2d 244, 249 (2d Cir. 1991), that would diminish the fairness of her Article 75 proceeding. See Latino Officers Ass'n v. City of New York, 253 F. Supp. 2d 771, 784 (S.D.N.Y. 2003)("comparative and anecdotal evidence" available at the time of the Article 78 proceeding does not demonstrate that plaintiff lacked a full and fair opportunity to litigate her claims). Accordingly, plaintiff fails to demonstrate that she did not have a full and fair opportunity to litigate her Equal Protection

claims. Therefore, defendant's motion to dismiss plaintiff's Equal Protection claims as barred by collateral estoppel should be granted.

### B. 3020-a Proceeding

The Second Circuit has held that the findings reached after a Section 3020–a hearing "are entitled to preclusive effect." Burkybile v. Bd. of Educ. of the Hastings–on–Hudson Union Free Sch. Dist., 411 F.3d 306, 308 (2d Cir. 2005). Defendant asserts that the finding of the IHO after the 3020-a hearing that plaintiff was terminated for cause, precludes any First Amendment retaliation claim, because even if plaintiff could prove a *prima facie* case of retaliation, defendant "can still prevail by demonstrating that it would have taken the same adverse action regardless of the protected speech." (Mem. of Law at 10.) The Court disagrees: the factual finding that plaintiff engaged in misconduct does not prove that defendant would have taken the same action regardless of the allegedly protected speech.[13] See Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147, 152 (2d Cir. 2006)("Sufficiency of the State's evidence of *violations* ... does not defeat [plaintiffs'] present claim, because a plaintiff can prove First Amendment retaliation even if the measures taken by the state were otherwise justified"); Williams v. New York City Dept. of Educ., No. 12 Civ. 8518(GWG), 2013 WL 5226564, at *9 (S.D.N.Y. Sept, 17, 2013) ("in some instances, the existence of factual findings of a hearing officer unfavorable to a plaintiff does not affect the plaintiff's ability to argue that the charges themselves—even if meritorious— were brought with improper motives"); Morey v. Somers Cent. Sch. Dist., No. 06 Civ. 1877(WCC), 2007 WL 867203, at *5 (S.D.N.Y. Mar. 21, 2007)("plaintiff's claim for First Amendment retaliation is not precluded merely because the hearing officer decided that the

---

[13] However, as discussed below, plaintiff did not engage in protected speech or association. Accordingly, this retaliation claim should be dismissed for failure to state a claim, rather than based on collateral estoppel. See *infra* at 21-22.

School District had sufficient cause to terminate plaintiff.")[14] Therefore, defendant's motion to dismiss plaintiff's First Amendment retaliation claim as barred by collateral estoppel should be denied.

## II. Failure to State a Claim

Defendant also moves to dismiss the Second Amended Complaint on the grounds that plaintiff fails to state an Equal Protection, Due Process, First Amendment, or Title VII claim.

### A. Equal Protection

Defendant moves to dismiss plaintiff's Equal Protection claims, to the extent not already barred by collateral estoppel, on the grounds that none of the discrimination she alleges is based on a constitutionally protected status. Plaintiff claims defendant violated her constitutional right to Equal Protection by discriminating against her on the basis of the pending criminal charges. She states other teachers who commit offenses endangering the welfare of the students were not similarly disciplined and that defendant treated her differently out of revenge for its prior unsuccessful effort to terminate her after her manslaughter conviction.

The Court agrees with defendant that even if plaintiff's Equal Protection claims were not foreclosed by collateral estoppel, she fails to state an Equal Protection claim. In Engquist v. Oregon Dep't of Agr., 553 U.S. 591 (2008), the Supreme Court held that the Equal Protection

---

[14] Defendant's reliance on a Second Circuit summary order is misplaced, as such orders are not precedential. See Def.'s Mem. of Law at 8 (citing Roemer v. Bd. of Educ. of City of New York, 150 Fed. Appx. 38, 39-40, 2005 WL 2323180, at *1 (2d Cir. 2005)(3020–a hearing determination that plaintiff was terminated for cause "rebuts any claim that [his] discharge was executed in retaliation for the exercise of any First Amendment right to utilize the grievance process"). Burkybile, cited in Roemer, noted the potential arguments regarding preclusion based on a 3020-a hearing's finding of misconduct, but did not affirm the dismissal of the First Amendment claim on that ground. In addition, Roemer has since been contradicted by at least one subsequent summary order, see Broich v. Inc. Village of Southampton, 462 Fed. Appx. 39, 46, 2012 WL 470422, at *6 n.4 (2d Cir. 2012) ("The District Court also erred in concluding that the hearing officer's determination substantiating the charges brought against [plaintiff] 'rebut[s] any claim by plaintiff that charges were preferred and pursued [and] that he was placed on administrative leave and suspended for a retaliatory purpose.' That the [police department] had sufficient justification to bring charges against [plaintiff] does not resolve the question of whether they would in fact have brought the charges in the absence of retaliatory animus."), and in Matusick, 2014 WL 30694, at *10 (administrative finding that plaintiff engaged in misconduct at work did not preclude First Amendment retaliation claim).

14

clause protects public employees from discrimination based on a suspect class, i.e. their race, gender, or national origin. It does not, however, cover a public employee's claim that she was "intentionally treated … differently than others similarly situated … for arbitrary, vindictive or malicious reasons." Id. at 596 (rejecting a purported "class of one" claim). Noting that a certain amount of discretion is required by governmental managers in making personnel decisions and that "[p]ublic employees typically have a variety of protections from" arbitrary or malicious "personnel actions," the Court refused to "constitutionalize the employee grievance" for arbitrary or vindictive personnel actions that are not tied to race, gender, or national origin. Id. at 609. This holding applies to tenured employees. Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008). Accordingly, plaintiff's claims that she was not treated equally to her colleagues based on factors which are not protected, such as her criminal history, disciplinary history, or pending criminal charges, fails to state a claim under the Equal Protection clause. Therefore, defendant's motion to dismiss plaintiff's Equal Protection claims should be granted even if the claims are not barred by collateral estoppel.

                B.     Due Process

       "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Bryant v. New York State Educ. Dept., 692 F.3d 202, 218 (2d Cir. 2012). It is well-settled that "tenured public employees have a constitutionally protected property interest in their employment." Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 213 (2d Cir. 2003). See also Blum v. Schlegel, 18 F.3d 1005, 1015 (2d Cir. 1994) ("Tenure, once conferred, is a property interest protected by the Due Process Clauses of the Fifth and Fourteenth Amendments."). Defendant does not dispute that plaintiff had a constitutionally protected property interest in her

continued employment, but argues that plaintiff fails to state a claim because she received all the process that was due. The Court agrees.

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996). "Where a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003). Defendant argues that plaintiff challenges a random and unauthorized act and that the post-deprivation Article 75 hearing was sufficient process; plaintiff states she is "challeng[ing] the established state procedures under New York State law ...because of the use of barred information;" defendant replies that the established procedures provided by the Section 3020-a hearings provide "all the process that is due." (Memo of Law at 12-13; Opp'n at 6; Reply at 8-9.)

Whether plaintiff's claim is characterized as challenging a random and unauthorized act or challenging established but defective state procedures, plaintiff's allegations fail to state a claim upon which relief can be granted. To the extent plaintiff challenges the random and unauthorized actions of the IHO in considering the sealed charges or evidence presented in the criminal case, the availability of a post-deprivation Article 75 proceeding to correct any alleged errors provides sufficient due process. See Marino v. Ameruso, 837 F.2d 45, 46-47 (2d Cir. 1988)(post-deprivation hearing provided sufficient process where traffic cop alleged that the administrative law judge's "failure to strike the complainant's testimony deprived him of his right to cross-examination"). See also Vargas, 377 F.3d at 208 (plaintiff's claim that the

16

NYPD's three-year delay in initiating disciplinary proceedings violated his due process rights was properly dismissed because "Article 78 … provides a meaningful remedy where violations of due process by a local government entity are alleged"); Smith v. New York City Dep't of Educ., 808 F. Supp. 2d 569, 583 (S.D.N.Y. 2011) (where plaintiff had both administrative proceedings pursuant to 3020-a as well as filed Article 75 proceedings, he "received all the process that was due to him").[15]  Therefore, to the extent plaintiff claims the IHO was not authorized to consider the sealed charges or evidence from the criminal case, her Due Process claim should be dismissed because an adequate post-deprivation remedy was available. See Williams v. New York City Dep't of Educ., No. 12 Civ. 8518(GWG), 2013 WL 5226564, at *10 (S.D.N.Y. Sept. 17, 2013)(Report and Recommendation holding that the availability of post-deprivation remedy was fatal to teacher's claim that due process was violated when the 3020-a hearing officer considered her sealed arrest records).

To the extent plaintiff challenges Section 3020-a procedures because they do not prevent the consideration of sealed charges and evidence, e.g. by requiring an automatic stay pending the outcome of the criminal proceedings or excluding Section 160.50-sealed charges and evidence, the Court agrees with defendant that the 3020-a procedures are constitutionally adequate. When a plaintiff claims established procedures are inadequate, the Court balances three factors to determine what process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable

---

[15] Although the plaintiffs in Ameruso and Vargas appealed their terminations by way of N.Y. C.P.L.R. Article 78 and plaintiff appealed the 3020-a determination by way of N.Y. C.P.L.R. Article 75, this section of the CPLR provides sufficient due process. See Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist., 902 F.2d 208, 212 (2d Cir. 1990) ("Moreover, as we have noted, adequate 'post-deprivation' procedures are available to protect [plaintiff's] property interest in her tenured teaching position. All the process that was due in this case has been provided.")

value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 466 (2d Cir. 2006) (quoting

Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

As noted above, "Section 3020-a lays out extensive litigation procedures for hearings, including motion practice, bills of particulars, mandatory disclosure, discovery, subpoena power, right to counsel, cross-examination, testimony under oath, and a full record." Burkybile, 411 F.3d at 312 (2d Cir. 2005). Courts have repeatedly held that 3020-a provides more than sufficient process. See, e.g., Cozzi v. Great Neck Union Free School Dist., No. 05-CV-1385(ENV), 2009 WL 2602462, at *13 (E.D.N.Y. Aug. 21, 2009) ("[I]t is well established that the disciplinary procedures outlined in § 3020–a provide more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment.")

Plaintiff fails to "assert[] any reasonable basis for finding that the [relevant] procedures … are inadequate." Henneberger v. County of Nassau, 465 F. Supp. 2d 176, 194 (E.D.N.Y. 2006). See generally Ahlers v. Rabinowitz, 684 F.3d 53, 63-64 (2d Cir. 2012) (affirming dismissal of *pro se* plaintiff's procedural due process claim because he failed to allege what process was available to him or a sufficient basis for its inadequacy). Although plaintiff alleges that defendant should have been prohibited from inquiring into the conduct underlying her arrest, Section 160.50 and New York Human Rights Law Section 296(16) themselves do not prohibit an employer's inquiry into the conduct underlying the charges.[16]

---

[16] Although plaintiff relies primarily on Section 160.50, she also believes that Section 160.60 of New York Criminal Procedure Law prohibited defendant's inquiry. (Second Amended Compl. ¶ 73.) This provision reads:

Upon the termination of a criminal action or proceeding against a person in favor of such person, as defined in subdivision two of section 160.50 of this chapter, the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status he occupied before the arrest and prosecution. The arrest or prosecution shall not operate as a disqualification of any person so accused to

18

Section 160.50 and N.Y. Human Rights Law Section 296(16) created a "civil remedy" to prevent "stigma from the *accusation* of criminal conduct terminated in favor of the accused." People v. Patterson, 78 N.Y.2d 711, 716 (1991)(emphasis added).   When a hearing officer bases the determination not on the fact that a person was arrested, but on the conduct underlying that arrest, there is no violation of N.Y. Human Rights Law Section 296(16). See also Salanger v. U.S. Air, 611 F. Supp. 427, 432 (N.D.N.Y. 1985) (where criminal charges were dismissed against plaintiff, defendant could still lawfully terminate her based on its own internal investigation of her misconduct). Scott D. v. New York City Dep't of Educ., 786 N.Y.S.2d 343, 344 (2d Dep't. 2004) ("We also reject the appellant's assertion that the hearing officer discriminated against him based on his arrest, as the record demonstrates that he was disciplined for the conduct underlying the arrest."). Moreover, while a prosecutor may not have proof beyond a reasonable doubt to pursue a criminal conviction, as long as the administrative determination is supported by substantial evidence, it need not be set aside due to "the mere reception of erroneously unsealed evidence." In re Charles Q. v. Constantine, 85 N.Y.2d 571, 575 (1995) (upholding disciplinary hearing officer's determination based in part on erroneously unsealed evidence of state trooper's sexual misconduct with a minor, even though the state trooper was acquitted of all criminal charges).

Even assuming that the IHO improperly considered charges and evidence sealed pursuant to C.P.L. Section 160.50, "[v]iolations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law

---

pursue or engage in any lawful activity, occupation, profession, or calling. Except where specifically required or permitted by statute or upon specific authorization of a superior court, no such person shall be required to divulge information pertaining to the arrest or prosecution.

N.Y. C.P.L. § 160.60.  However, similar to Section 160.50 and N.Y. Human Rights Law § 296(16), "CPL 160.60 should not be read as foreclosing a governmental agency ... from inquiring into an employee's misconduct in evaluating his fitness for employment." Lacey v. Coughlin, 468 N.Y.S.2d 706, 708 (2d Dep't 1983).

define the requirements of procedural due process." Jones v. Nickens, -- F. Supp. 2d -- , 2013

WL 4427142, at *18 n.10 (E.D.N.Y. Aug. 20, 2013) (Vogelfang v. Capra, 889 F. Supp. 2d 489,

502-03 (S.D.N.Y. 2012)). It is well-settled that the admission of evidence sealed by C.P.L.

Section 160.50 is not an error of constitutional magnitude. See People v. Patterson, 78 N.Y.2d

711, 715 (1991) (admission of sealed evidence in a criminal trial did not require suppression

because "a review of the legislative history of CPL 160.50 and related statutes enacted at the

same time lead inevitably to the conclusion that the nature of that statutory remedy is unrelated

to any Fourth or Fifth Amendment protections."). See also U.S. v. Jakobetz, 955 F.2d 786,

802 (2d Cir. 1992) ("There is no authority to indicate that [defendant's] constitutional rights have

been violated [by use of a sealed photograph in a photo-array].")[17] As such, courts have

repeatedly held that the admission of sealed evidence or charges in an employee's civil

disciplinary hearing does not deprive an individual of a fair hearing or any constitutional right.

See e.g., In re Charles Q., 85 N.Y.2d at 575 (admission of erroneously unsealed evidence did not

deprive terminated plaintiff of a fair hearing or implicate any constitutional right); Scott D., 786

N.Y.S.2d at 344 ("we reject the contention that the use of [erroneously] unsealed records at the

disciplinary hearing brought by the New York City Department of Education against the

appellant requires that the hearing officer's determination be set aside").

It is neither illegal nor unfair for an employer to investigate employee conduct and

terminate that employee based on substantial evidence of misconduct, even though criminal

charges have been dismissed. Moreover, the admission of evidence sealed by C.P.L. 160.50

does not implicate "the values of fairness that underlie the Due Process Clause." DeMichele,

---

[17] Although these cases are criminal cases, the Second Circuit noted that an alleged procedural defect "that would not offend the Constitution in a criminal prosecution *a fortiori* does not do so in a § 3020–a(5) proceeding." DeMichele v. Greenburgh Cent. Sch. Dist., 167 F.3d 784, 789 (2d Cir. 1999) (24-year delay between the alleged sexual misconduct with students and the 3020-a hearing based on the same did not violate tenured teacher's substantive due process rights).

167 F.3d at 789. Thus, plaintiff fails to allege any plausible inadequacy of the 3020-a

procedures.[18] Accordingly, defendant's motion to dismiss plaintiff's claim that the 3020-a

procedures violated her right to Due Process should be granted for failure to state a claim.

    C.    First Amendment

Defendant also argues that plaintiff fails to allege a plausible First Amendment retaliation

claim. The First Amendment protects a public employee from retaliation by her employer for the

employee's speech or associational conduct only if the speech or conduct "touches on a matter of

public concern." Singer v. Ferro, 711 F.3d 334, 339, 341 (2d Cir. 2013). Since "[a] matter of

public concern is one that relates to any matter of political, social, or other concern to the

community," the Court must consider, *inter alia*, "whether the speech was calculated to redress

personal grievances or whether it had a broader public purpose." Id. at 339 (internal quotation

marks and citation omitted). Here, plaintiff alleges that she "enjoyed a protected liberty interest

in the private dealings of her life under the First Amendment so that any such behavior, not

affecting her ability to effectively teach; or any behavior that was found not to be criminal" could

not be "used in a manner that would deprive the Plaintiff of her protected property interest."

(Second Am. Compl. ¶ 72.) However, what plaintiff claims as her "private dealings" in her life –

the event on January 7, 2011 with her ex-boyfriend or her association with the shooter – do not

---

[18] Defendant's interest in removing teachers that have been found by substantial evidence to have engaged in questionable conduct, such as threatening someone with serious injury or death, cannot be minimized. Public school teachers play an "unquestionably" central role in "the Nation's most important institution" – the public school system. Lorain Journal Co. v. Milkovich, 474 U.S. 953, 958 (1985). "[T]hrough both the presentation of course materials and the example [s]he sets, a teacher has an opportunity to influence the attitudes of students toward government, the political process, and a citizen's social responsibilities;" making her "influence … crucial to the continued good health of a democracy." Id. (citation omitted). Thus, while plaintiff's conduct outside the workplace may not have jeopardized the safety of her students or affected her ability to help students reach their educational goals, her actions not only created negative publicity, but compromised her ability to serve as a role model – to credibly speak about conflict resolution and how to be a responsible citizen. Although the Court rules that plaintiff's Second Amended Complaint should be dismissed, plaintiff's anguish in losing a job that she believes she excelled in and frustration regarding the reason for her termination, is evident. While I do not question the sincerity of plaintiff's feelings, it is the Court's hope that plaintiff will find another way to meaningfully contribute her skills and energy to society.

"touch[] on matters of public concern." Accordingly, plaintiff cannot state any First Amendment retaliation claim based on these "private dealings."

To the extent plaintiff instead asserts that defendant infringed on her right to intimate association, rather than expressive association, her complaint likewise fails to state a claim. "The right to intimate association" prohibits undue government interference with "the fundamental elements of personal liberty," specifically, "the choice to enter into and maintain certain intimate, identity-defining human relationships – such as marriage, parenthood, and cohabitation with family []." Pinter v. City of New York, No. 09. Civ. 7841(SAS), 2013 WL 5597545, at *13 (S.D.N.Y. Oct. 10, 2013) (citations omitted). See also Matusick, 2014 WL 30694, at *19 (discussing right to intimate association). The only association pled in the complaint is plaintiff's acquaintance with the shooter. However, "[t]he Constitution does not recognize a generalized right of social association ... and courts in the Second Circuit have not accepted intimate association claims based on friendships, however close." Silverstein v. Lawrence Union Free Sch. Dist. No. 15, No. 10 CV 993(SJF)(WDW), 2011 WL 1261122, at *6 (E.D.N.Y. Feb. 15, 2011)(Report and Recommendation), adopted at 2011 WL 1261114 (E.D.N.Y. Mar. 30, 2011). Therefore, any claim based on plaintiff's right of social association should be dismissed for failure to state a claim.

In her opposition to defendant's motion, plaintiff insists that rather than protected speech, she engaged in conduct protected by Section 160.50. (Opp'n at 5, ECF No. 18.) However, as discussed above, Section 160.50 does not confer constitutional protection on plaintiff's conduct. Accordingly, defendant's motion to dismiss plaintiff's First Amendment retaliation claim should be granted for failure to state a claim.

D.    Title VII

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national

origin. 42 U.S.C. § 2000e-16.[19] As defendant notes, plaintiff does not allege she was

discriminated based on status protected by Title VII and her "status as a convicted felon is not a

protected class under Title VII." Gillum v. Nassau Downs Reg'l Off Track Betting Corp. of

Nassau, 357 F. Supp. 2d 564, 569 (E.D.N.Y. 2005). Therefore, plaintiff fails to state a claim

under Title VII.

III.    Election of Remedies

Finally, defendant moves to dismiss plaintiff's New York Human Rights law claim as

barred by her election to file a complaint with the New York State Division of Human Rights

("NYSDHR"). Plaintiff filed an administrative claim of discrimination with the NYSDHR,

alleging that her termination violated New York Human Rights Law Section 296(16) because her

arrest record was sealed prior to the administrative ruling. (Welikson Decl., Ex. 4, ECF No. 20-

4.) By Determination and Order After Investigation, the NYSDHR determined that there was no

probable cause to believe defendant had discriminated against plaintiff and dismissed her

complaint. (Welikson Decl., Ex. 5., ECF No. 20-5.) The NYSDHR held that "the case law is

plain that negative actions may be taken against an employee's status where, as here, there is an

independent investigation into the conduct leading to the arrest or criminal accusation in

question." (Id. at 2.) The NYSDHR further found that the defendant had legitimate reasons for

plaintiff's termination. (Id.)

Plaintiff's New York Human Rights law claims are barred by her election of remedies.

Under New York law:

---

[19] Plaintiff alleges that "[o]n April 25, 2012, the United States Equal Employment Opportunity Commission
dismissed Plaintiff's charges finding that the charge did not state a claim enforceable under the statu[t]es by the
EEOC. On the same date... the EEOC issued a right to sue letter. (Second Amended Compl. at 14.)

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages ... and such other remedies as may be appropriate ... unless such person had filed a complaint hereunder or with any local commission on human rights.

N.Y. Exec. Law § 297(9). "Thus, by the terms of the statute ... [New York Human Rights Law claims], once brought before the NYSDHR, may not be brought again as a plenary action in another court." York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002). See also McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 74 n.3 (2d Cir. 2010) ("'[A] state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim.'") (quoting Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 884 (2d Cir. 1995)).[20] Since plaintiff pursued her New York Human Rights Law claim before the NYSDHR, this Court lacks jurisdiction over them. The Court therefore recommends that defendant's motion to dismiss plaintiff's claims under New York Human Rights Law Section 296(16) should be granted.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that defendant's motion to dismiss should be granted and that plaintiff's Second Amended Complaint should be dismissed.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial

---

[20] The statute provides that the election of remedies bar does not apply where the NYSDHR "has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled." N.Y. Exec. Law § 279(9). These exemptions are inapplicable here.

24

review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002);

Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474

U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated:  January 15, 2014
        Brooklyn, New York