UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

KIM DEPRIMA,

                              Plaintiff,

          v.

CITY OF NEW YORK DEPARTMENT OF
EDUCATION,

                              Defendant.

**MEMORANDUM & ORDER**
12-CV-3626 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Kim DePrima, proceeding *pro se*, commenced the above-captioned action on

July 20, 2012, against Defendant City of New York Department of Education alleging violations

of her constitutional rights to equal protection, due process and freedom of speech or association,

as well as violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq*. ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law

§ 296(16) ("NYSHRL").  Defendant moved to dismiss the Second Amended Complaint.

(Docket Entry No. 19.)  The Court referred Defendant's motion to Magistrate Judge Lois Bloom

for a report and recommendation.  On January 15, 2014, Judge Bloom filed a report and

recommendation ("R&R") recommending that the Court grant Defendant's motion to dismiss in

its entirety.  (Docket Entry No. 25.)  Plaintiff filed her objections on February 24, 2014.[1]

(Docket Entry No. 27.)  For the reasons discussed below, the Court adopts Judge Bloom's R&R,

---

[1] Plaintiff failed to file objections by the deadline but subsequently requested, and was granted, additional time to file her objections.

as modified, and grants leave to Plaintiff to file an amended complaint within 30 days of the date of this Memorandum and Order as specified below.

## I.  Background

Plaintiff was a tenured teacher at the Carteret School in Staten Island.[2]  (Second Am. Compl. ¶¶ 3, 25.)  For various underlying offenses, Defendant City of New York Department of Education attempted to terminate Plaintiff in 2009, 2010 and 2011.  (*Id.* ¶¶ 36, 40, 47.)  In accordance with New York Educational Law, each termination attempt resulted in a hearing before an impartial hearing officer ("IHO"), the procedures for which are outlined in New York Educational Law § 3020-a.  *See* N.Y. Educ. Law §§ 3020 and 3020-a.  Each § 3020-a hearing and the underlying events are discussed below.

In 2008 Plaintiff, along with another individual, failed to control dogs under their control. (*See* Impartial Hearing Officer Decision and Order dated Nov. 10, 2009 ("2009 IHO Decision and Order") 4, annexed to Second Am. Compl. as Ex. A.).  The dogs escaped and caused serious injury to Plaintiff's 90-year-old neighbor, resulting in his death.  (*Id.*)  Plaintiff pled guilty to manslaughter in the second degree.  (*Id.* at 5.)  Pursuant to New York State Education Law § 3020-a, Defendant sought disciplinary action against Plaintiff for engaging in "criminal conduct, conduct unbecoming her profession and . . . excessive[] absen[ce]."  (*Id.* at 1.)  The IHO held that "substantial punishment" was necessary but "termination [was] not the appropriate penalty for the neglect of duty and conduct unbecoming a professional that is proven on this record."  (*Id.* at 23.)

---

[2]  In reviewing Plaintiff's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all of the factual allegations in the Complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011).

In 2010, Defendant sought disciplinary action against Plaintiff for alleged fraud and deceit in the form of taking paid sick-leave rather than unpaid leave to attend court proceedings in Richmond County. (Impartial Hearing Officer Decision and Order Dec. 3, 2010 ("2010 IHO Decision and Order") 2, annexed to Second Am. Compl. as Ex. B.). The IHO held that Defendant did not "prove[] that [DePrima] had submitted any false documents" and, therefore, denied the termination attempt but did impose a fine of $500.00 for taking an improper day of sick leave. (*Id.* at 13; Second Am. Compl. ¶ 45.)

In January 2011, Plaintiff was arrested for taking part in a "domestic dispute." (Second Am. Compl. ¶ 48; *see also* Aug. 30, 2011 Transcript of County of Richmond Criminal Court Proceedings 2:14–3:12, annexed to Second Am. Compl. as Ex. D.) On the night in question, Plaintiff attended a birthday party at the home of her former neighbor Lakeisha Dennis. (Pl. Article 75 Opp'n Mot., Part I at 1, annexed to the Decl. of Benjamin Welikson as Ex. 2.) At some point, two "associates" of Plaintiff's became involved in a dispute with Plaintiff's ex-boyfriend Jermaine Gavins. (*Id.*) One "associate," Shawn Hicks, was intoxicated and, refusing to leave, fired shots at the door of Gavins' home. (*Id.*) Hicks then got into Plaintiff's car, pointed the gun at Plaintiff and told her to drive. (*Id.*) Plaintiff drove to a local bar where she was eventually arrested by police. (*Id.*) On January 9, 2011, Plaintiff was arraigned in criminal court on charges of attempted murder, possession of a weapon and reckless endangerment. (*Id.*) The criminal charges against Plaintiff were eventually dismissed with prejudice on August 30, 2011. (Second Am. Compl. ¶ 50.)

Defendant commenced another proceeding against Plaintiff for engaging in "criminal conduct and conduct unbecoming her profession as a teacher." (*See* Impartial Hearing Officer Decision and Order Nov.14, 2011 ("2011 IHO Decision and Order") 1–2, annexed to Second

Am. Compl. as Ex. C; Second Am. Compl. ¶ 47.) After eight days of hearings, between June 21, 2011 and September 23, 2011, the IHO found that Plaintiff "engaged in conduct unbecoming her profession, . . . that this conduct resulted in negative publicity, ridicule, and notoriety" and that such conduct constituted "just cause for termination." (2011 IHO Decision and Order 31–32.) The 3020-a hearing commenced before Plaintiff's criminal charges were adjudicated in criminal court but concluded after they were dismissed. (Second Am. Compl. ¶ 49.) The IHO found that "the fact that the charges against [DePrima] were dismissed does not mean that the conduct did not occur." (*Id.* ¶ 52.)

Plaintiff filed a petition pursuant to Article 75 of the New York Civil Practice Law and Rules seeking to vacate, modify or set aside the 2011 IHO Decision and Order in the County of Richmond Supreme Court of New York. (*See* Mar. 21, 2012 Decision and Order ("Article 75 Decision"), annexed to the Decl. of Benjamin Welikson as Ex. 3.) In her Article 75 petition Plaintiff argued that the 2011 IHO Decision and Order violated her due process right by the IHO's use of information specifically prohibited by NYSHRL § 296(16) and New York Criminal Procedure Law ("NYCPL") § 160.50. (Pl. Article 75 Opp'n Mot., Part II at 2–6.) Plaintiff also argued that the IHO violated Plaintiff's equal protection rights in that the IHO denied Plaintiff the benefits of NYSHRL § 296(16) and NYCPL § 160.50, violating state law and thereby "giving rise to the constitutional violations." (*Id.* at 6.) Furthermore, Plaintiff argued that the IHO's "actions were not a mistake and she exceeded and abused her power and her decision to terminate petitioner's employment [was] irrational." (*Id.* at 7–8.) Plaintiff's Article 75 petition was denied. (*Id.* at 3.) The Honorable Philip G. Minardo of the Supreme Court of the State of New York held that there was "no rational basis to overturn the determinations made by the arbitrator with regard to the credibility of the witnesses" and, therefore, Plaintiff had "failed to

demonstrate that the [IHO]'s decision was not supported by the evidence and/or that it was arbitrary and capricious." (Article 75 Decision 3.)

Plaintiff filed an administrative complaint with the New York State Division of Human Rights, dated as received on February 15, 2012. (Pl. Admin. Compl., annexed to the Decl. of Benjamin Welikson as Ex. 4.) On May 17, 2012, the administrative complaint was dismissed. (*See* New York State Division of Human Rights Determination and Order, annexed to the Decl. of Benjamin Welikson as Ex. 5.)

## II. Discussion

### a. Standard of Review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(C); *see also Larocco v. Jackson*, No. 10-CV-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. 28 U.S.C. § 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2. The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *See Rahman v. Fischer*, No. 10-CV-1496, 2014 WL 688980, at *1 (N.D.N.Y. Feb. 20, 2014) ("If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error." (citations omitted)); *Time Square Foods Imports LLC v. Philbin*, No. 12-CV-9101, 2014 WL 521242, at *2 (S.D.N.Y.

Feb. 10, 2014) (clearly erroneous standard applies when party reiterates arguments made to the magistrate judge); *Black v. Graham*, No. 11-CV-1495, 2014 WL 496878, at *1 (S.D.N.Y. Feb. 4, 2014) (same); *Fonseca v. Colvin*, No. 12-CV-5527, 2014 WL 297488, at *2 (S.D.N.Y. Jan. 28, 2014) (same); *Davis v. Campbell*, No. 13-CV-0693, 2014 WL 234722, at *1 (N.D.N.Y. Jan. 22, 2014) (same); *Ramos v. Superintendent, Sing Sing Corr. Facility*, No. 11-CV-4929, 2014 WL 243148, at *1 (S.D.N.Y. Jan. 22, 2014) (same); *Bravo v. Unger*, No. 10-CV-5659, 2014 WL 201472, at *1 (S.D.N.Y. Jan. 16, 2014) (same); *Best v. City of New York*, No. 12-CV-7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014) (same); *Vorcom Internet Servs., Inc. v. L&H Eng'g & Design LLC*, No. 12-CV-2049, 2014 WL 116130, at *1 (S.D.N.Y. Jan. 13, 2014) (same); *Ogunbayo v. City of New York*, No. 12-CV-428, 2014 WL 60009, at *3 (E.D.N.Y. Jan. 7, 2014) (same); *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (same) (collecting cases).

### b. Plaintiff's Objections

#### i. Equal Protection

The Second Circuit has recognized equal protection "class of one" claims as well as "selective enforcement" claims. *See Martine's Serv. Ctr., Inc. v. Town of Wallkill*, --- F. App'x ---, ---, 2014 WL 321943, at *2 (2d Cir. Jan. 30, 2014) (identifying and stating the elements of the two equal protection claims). Judge Bloom understood Plaintiff to assert a class of one claim whereas the Plaintiff, ostensibly, argues that she has asserted a selective enforcement claim. Each claim is discussed in turn.

#### 1. Class of One

Judge Bloom found that Plaintiff failed to state a class of one equal protection claim as the Supreme Court foreclosed such claims in *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008). (R&R 14–15.) The Second Circuit has recognized that *Engquist* foreclosed class of one

claims for government employees. *See Chick v. Cnty. of Suffolk*, --- F. App'x ---, ---, 2013 WL 6332682, at *2 (2d Cir. Dec. 6, 2013) (affirming the lower court's dismissal of a complaint and stating that an equal protection claim based on a "'class of one' does not exist in the public employment context"); *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (stating that class of one claims involve a "plaintiff [who] alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" and stating that "[t]he Supreme Court's decision in *Engquist* . . . eliminated class-of-one claims for government employees"); *Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008) (reversing, in light of *Engquist*, the lower court's grant of a preliminary injunction based on a professor's class of one claim); *see also Zane v. City of New York*, No. 11-CV-4961, 2014 WL 972032, at *10 (E.D.N.Y. Mar. 13, 2014) (holding that the plaintiff could not "proceed with a class of one argument because the Second Circuit has confirmed that the Supreme Court's decision in *Engquist* . . . made it unavailable in the public employment context"). Following Supreme Court and Second Circuit case law, the Court agrees with Judge Bloom that Plaintiff, as a public employee, cannot state a class of one equal protection claim.

### 2. Selective Enforcement

Plaintiff argues that she did not allege a class of one claim as addressed by Judge Bloom in the R&R, but instead alleged that she was singled out and punished based on malice and bad faith. (Pl. Objections Mem. 2.) Plaintiff argues that she has "alleged a pattern of bad faith allegations lodged against her over a two year period, all of which were dismissed" raising "a genuine issue of fact that a jury should decide." (*Id.*) Plaintiff's invocation of "malice and bad faith" — legal terms of art appearing nowhere in the Second Amended Complaint — suggests that she alleges an equal protection claim based on selective enforcement. The "[Second] Circuit

has not yet decided whether selective enforcement claims are still viable in the public employment context" after *Engquist*. *Emmerling v. Town of Richmond*, 434 F. App'x 10, 12 (2d Cir. 2011); *Kamholtz v. Yates Cnty.*, 350 F. App'x 589, 591 (2d Cir. 2009) (suggesting that a selective enforcement claim is no longer viable after *Engquist* but not ruling on that ground and instead affirming the lower court's dismissal based on a failure to allege facts showing that plaintiff was treated differently than others similarly situated); *Sharpe v. City of N.Y.*, No. 11-CV-5494, 2013 WL 2356063, at * 4 n.6 (E.D.N.Y. May 29, 2013) ("There is confusion within this Circuit as to the distinction between a 'class of one' and a 'selective enforcement' equal protection claim and, as a result, the law in this Circuit is unsettled as to whether public employees' claims asserted under the 'selective enforcement' theory can survive in light of *Engquist*."). Liberally construing Plaintiff's Second Amended Complaint, the Court assumes that Plaintiff is asserting a selective enforcement claim and addresses that claim below.

An equal protection claim premised on selective enforcement requires a showing that (1) "compared with others similarly situated, [the plaintiff] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [the plaintiff]." *Martine's Serv. Ctr.*, --- F. App'x at ---, 2014 WL 321943, at *2 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). There is disagreement within this Circuit with respect to the proper "similarly situated" standard applicable in selective enforcement claims. *See, e.g.*, *Segreto v. Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *6–7 (E.D.N.Y. Feb. 24, 2014) ("Courts in this Circuit are split regarding the definition of 'similarly situated' in selective enforcement and class of one cases."); *Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, No. 09-CV-5195,

2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012) ("There appears to be some disagreement within the Circuit as to the definition of 'similarly situated' in 'selective enforcement,' as opposed to 'class of one,' equal protection claims."); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 694–95 (S.D.N.Y. 2011) (collecting and comparing cases). Class of one claims require that alleged comparators be "prima facie identical," *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (citation and internal quotation marks omitted), *overruled on other grounds by Appel*, 531 F.3d at 138, whereas, as some courts have held, selective enforcement claims only require that the alleged comparators be "similarly situated in all material respects," *Mosdos Chofetz Chaim*, 815 F. Supp. at 693. The latter standard is "slightly less stringent." *Id.* at 696 (adopting and applying this "less-demanding test"); *see also Segreto*, 2014 WL 737531, at *7 (assuming *arguendo* that the "less stringent standard" controlled and applying that standard); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008) (same). However, this Court need not decide which standard should be applied because under either standard, Plaintiff has failed to state a claim.

In order to satisfactorily state a claim, the Court must determine, based on the allegations in the Second Amended Complaint, whether it is plausible that a reasonable jury could ultimately conclude that Plaintiff is similarly situated to an alleged comparator. *Mosdos Chofetz Chaim*, 815 F. Supp. at 698. Even under the less-demanding standard, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Id.* at 698 (alterations in original) (quoting *Bishop v. Best Buy, Co.*, No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 31, 2010)).

Plaintiff has failed to specifically identify any comparators, let alone allege that she is similar to those comparators in "all material respects."  Plaintiff attempts to identify comparators in three paragraphs of the Second Amended Complaint.  First, Plaintiff alleges that Defendants sought to terminate her "for conduct that would not have been pursued toward a vast majority of other tenured teachers."  (Second Am. Compl. ¶ 28.)  Second, Plaintiff alleges that "Defendants do not have a history of terminating tenured teachers because of conduct that did not directly affect the tenured teacher's ability to perform her duties."  (*Id.* ¶ 32.)  Third, Plaintiff alleges that "senior officials" cause negative media coverage every day, "yet none of those individuals were terminated even when they have a history of making controversial decisions."  (*Id.* ¶ 82.)  Notwithstanding that Plaintiff fails to specifically identify any comparator, absent from Plaintiff's allegations are *any* facts showing that these "tenured teachers" and "senior officials" are similarly situated to Plaintiff.  *See Segreto*, 2014 WL 737531, at *7 (dismissing a selective enforcement claim because of the plaintiff's failure to allege facts satisfying the less-demanding similarly situated standard); *Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) ("Under any applicable test, the plaintiff must allege facts showing that he is similarly situated to other persons with respect to the *specific incident* or *incidents* that are alleged to be examples of differential treatment." (emphasis added) (citation and internal quotation marks omitted)).  Upon a *de novo* review, Plaintiff's selective enforcement claim is dismissed.  However, the Court will allow Plaintiff to amend the Second Amended Complaint to state, if possible, a plausible selective enforcement claim.

### 3.  *McDonnell Douglas*

Plaintiff argues that Judge Bloom required more than demanded by Rule 8(a) of the Federal Rules of Civil Procedure.  (Pl. Objections Mem. 4.)  Specifically, Plaintiff argues that the

*McDonnell-Douglas* burden-shifting test applies to her equal protection claim and that Plaintiff

has adequately pleaded the elements of a prima facie claim. (*Id.* (citing *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973)).) Judge Bloom did not address the *McDonnell Douglas*

test. Plaintiff argues that this was in error as her status as a tenured teacher is a protected group

under the Equal Protection Clause. (Pl. Objections Mem. 4.) The Court finds Plaintiff's reliance

on *McDonnell Douglas* to be misplaced. Absent membership in a "suspect class," such as race

or national origin, any individualized harm committed by an employer in violation of the Equal

Protection Clause is properly recognized as either a class of one and/or selective treatment claim,

as discussed above. *See Harlen Associates v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir.

2001) ("Although the prototypical equal protection claim involves discrimination against people

based on their membership in a vulnerable class, we have long recognized that the equal

protection guarantee also extends to individuals who allege no specific class membership but are

nonetheless subjected to invidious discrimination at the hands of government officials."); *see*

*also Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979) ("Certain classifications,

however, in themselves supply a reason to infer antipathy. Race is the paradigm. A racial

classification, regardless of purported motivation, is presumptively invalid and can be upheld

only upon an extraordinary justification."); *Anand v. New York State Dep't of Taxation & Fin.*,

No. 10-CV-5142, 2014 WL 810873 (E.D.N.Y. Feb. 28, 2014) (applying *McDonnell Douglas* to

an equal protection claim based on age discrimination); *Potash v. Florida Union Free Sch. Dist.*,

No. 10-CV-3299, 2013 WL 5273792 (S.D.N.Y. Sept. 18, 2013) (applying *McDonnell Douglas* to

an equal protection claim based on gender discrimination); *Flaherty v. Massapequa Pub. Sch.*,

752 F. Supp. 2d 286, 295 (E.D.N.Y. 2010) (applying *McDonnell Douglas* to an equal protection

claim based on sexual orientation discrimination), *aff'd*, 462 F. App'x 38 (2d Cir. 2012).[3]

### ii. Due Process

#### 1. Collateral Estoppel

Plaintiff argues that the R&R erred in finding that the 3020-a proceeding comported with her procedural due process rights. (Pl. Objection Mem. 2.) Specifically, Plaintiff argues that she "did not receive all the process that was due because she was dealing with a biased arbitrator, who was willing, in the face of contradictory evidence [to] terminate the Plaintiff." (*Id.* at 2.) Plaintiff further argues that "[w]hile the state court's decision might be held as rational, it does not contain any ruling on whether the arbitrator's decision was biased . . . ." (*Id.*) Judge Bloom found that "any claim that the 3020-a decision was arbitrary and capricious should be dismissed as barred by collateral estoppel" because Judge Minardo concluded that the 2011 IHO Decision and Order was supported by the evidence and not arbitrary and capricious and thus, rational. (R&R 11 n.12.)

"Under New York law, collateral estoppel bars consideration of an issue when "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Dolan v. Roth*, 170 F. App'x 743, 746 (2d Cir. 2006) (alteration in original) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005)). The critical question is whether Judge Minardo's holding that Plaintiff had "failed to demonstrate that the [IHO]'s decision was not supported by the evidence and/or that it was

---

[3] Even if the Court were to recognize, contrary to law, Plaintiff's status as a tenured teacher to constitute a "protected group" under the Equal Protection Clause, the Complaint is devoid of any allegation that the Defendant investigated or terminated Plaintiff *because* of her membership in that group. Accordingly, Plaintiff fails to state a claim on this basis.

arbitrary and capricious," (Article 75 Decision 3), actually and necessarily decided that the IHO was not biased such that Plaintiff is precluded from asserting that claim before this Court.

Defendant argues that Plaintiff's bias claim was squarely presented to Judge Minardo. (Def. Objections Mem. 4.) However, Plaintiff's due process challenge, as presented to Judge Minardo, focused on the admission of evidence in alleged violation of the NYSHRL and the NYCPL, whereas her bias argument before the Court is based on the fact that the IHO ruled against Plaintiff despite contradictory evidence. (Pl. Objection Mem. 2.) The Court finds that Judge Minardo's holding that Plaintiff had failed to show that the IHO's decision was not supported by the evidence and/or arbitrary and capricious "actually and necessarily decided" the issue of the IHO's alleged bias based on a decision contrary to Plaintiff's interest in light of contradictory evidence. In *Dolan*, the Second Circuit held that a plaintiff could not avoid the "doctrine of collateral estoppel simply by recharacterizing in constitutional terms the same claims that were 'actually and necessarily decided' in prior proceedings." *Dolan*, 170 F. App'x at 746. Here, the leap is less drastic as Plaintiff did bring a due process challenge before Judge Minardo but based that challenge on the unlawful introduction of certain evidence rather than on the IHO's decision against Plaintiff despite contradictory evidence. At the heart of Plaintiff's arguments is that the IHO came to an improper conclusion — although fashioned differently, the claim is the same. Plaintiff is therefore barred from relitigating the claim before this Court. *See Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 311 (2d Cir. 2005) ("[W]e hold that because the Section 3020-a hearing was an administrative adjudication, we must give its findings preclusive effect."). However, even assuming that Plaintiff could bring a second due process challenge, she has failed to state a claim as she received all the process due to her.

## 2. Procedural Due Process

### A. Bias — Conflicting Evidence Before the IHO

"In evaluating what process satisfies the Due Process Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citation and internal quotation marks omitted). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." *Id.* Judge Bloom found that "the availability of a post-deprivation Article 75 proceeding to correct any alleged errors [by the IHO] provides sufficient due process." (R&R 16.) The Court agrees.

Plaintiff's claim clearly rests on the allegedly random and unauthorized action of the IHO. Plaintiff had an adequate post-deprivation remedy to address the IHO's bias in her Article 75 proceeding. *See Williams v. New York City Dep't of Educ. ex rel. City Sch. Dist.*, No. 12-CV-8518, 2013 WL 5226564, at *10 (S.D.N.Y. Sept. 17, 2013) ("Article 75 provides that an arbitrator's award may be modified or vacated on the application of a party to the arbitration and lists several grounds upon which such modification o[r] vacatur may be made, including corruption, *partiality*, and failure to follow procedure." (emphasis added)). Plaintiff now argues that the bias of the IHO is a "factual dispute not resolved by the state court." (Pl. Objections Mem. 2). However, any claim concerning the alleged bias of the IHO should have been presented to Judge Minardo during Plaintiff's Article 75 proceeding, as such is the function of Article 75 proceedings. *See Wai Mui v. New York City Bd./Dep't of Educ.*, 34 Misc. 3d 1215(A), 946 N.Y.S.2d 70 (Sup. Ct. 2011) (addressing and dismissing a claim of "bias by the [3020-a] Hearing Officer"). Whether Plaintiff effectively or persuasively argued that the IHO was biased is immaterial because Plaintiff had an adequate post-deprivation remedy to address the IHO's

alleged bias. *See Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) ("This court has 'held on numerous occasions' that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, 'an Article 78 proceeding is a perfectly adequate postdeprivation remedy.'" (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880–81 (2d Cir. 1996))); *Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 102 (2d Cir. 1988) (unavailability of Article 78 proceeding due to statute of limitations bar did not permit suit for due process violation); *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity."); *Williams*, 2013 WL 5226564, at *10 ("That [plaintiff] was unable to have her claims heard on the merits through an Article 75 proceeding because of her failure to file an action in a timely manner does not change this outcome."); *Myers v. Camden Cent. Sch. Dist.*, No. 10-CV-1167, 2012 WL 2921574, at *11 (N.D.N.Y. July 17, 2012) ("[E]ven if there has been a violation of New York Education Law § 3020-a, there has been no violation of the Fourteenth Amendment's Due Process Clause if sufficient post-deprivation process is given within a reasonable time period."); *Rausa v. Bd. of Educ. of the N. Syracuse Cent. Sch. Dist.*, No. 11-CV-1152, 2012 WL 967052, at *10 (N.D.N.Y. Mar. 21, 2012) ("The failure to follow the procedures of § 3020-a are remediable by an Article 78 proceeding."); *Arredondo v. Cnty. of Nassau*, No. 11-CV-710, 2012 WL 910077, at *10 (E.D.N.Y. Mar. 16, 2012) (dismissing a plaintiff's procedural due process claim for failure to utilize available Article 75 and 78 proceedings); *Farraj v. Metro. Transit Auth.*, No. 11-CV-0574, 2011 WL 2580198, at *2 (E.D.N.Y. June 28, 2011) (same), *aff'd sub nom. Farraj v. Metro. Transit Auth. of New York*, 501 F. App'x 10 (2d Cir. 2012); *Pabon v. New*

*York City Transit Auth.*, 703 F. Supp. 2d 188, 199 (E.D.N.Y. 2010) ("This Court is persuaded that the constitutionally sufficient remedies available to rectify any technical or procedural errors in the Transit Authority's robust grievance process, including resort to an Article 78 appeal proceeding, preclude a due process claim here."). Accordingly, the Court adopts Judge Bloom's recommendation that Plaintiff's procedural due process claim be dismissed as Plaintiff received all the process that was due to her.

### B. New York Criminal Procedure Law § 160.50 and New York State Human Rights Law § 296(16)

Plaintiff argues that Judge Bloom read the NYCPL and the NYSHRL too narrowly in holding that neither of these statutes prevents an employer's inquiry into conduct underlying criminal charges. Plaintiff specifically argues in opposition to the R&R that the statutes "precisely say that criminal action which has been terminated in favor of the Plaintiff is to be a nullity" and arrests are "to be barred" and can be addressed only if permitted by "another statute or authorization by a superior court." (Pl. Objections Mem. 3.) This is a reiteration of the argument presented to Judge Bloom. In her Second Amended Complaint Plaintiff stated that "Defendants have wrongfully terminated Plaintiff under the New York State Law . . . specifically New York Executive Law [§] 296(16) and New York Criminal Procedure Law [§] 160.50" and further asserted that "[NYSHRL §] 296(16) and [NYCPL §] 160.60 both recognized this constitutionally protected liberty interest and prevented the Defendants from using adverse information in a criminal proceeding (which was resolved in the Plaintiff's favor) against her in a later adverse proceeding." (Second. Am. Compl. ¶¶ 2, 73.)

NYSHRL § 296(16) states in pertinent part that:

It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to

> the individual involved, any arrest . . . of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual . . . .

N.Y. Exec. Law § 296(16). Judge Bloom found that that § 296(16) was not violated because the IHO based its determination "not on the fact that a person was arrested, but on the conduct underlying that arrest." (R&R 19.) Plaintiff argues, essentially, that she would not have been investigated but for the arrest, consequently, "there can be no rational holding that the [IHO]'s decision was not based on the arrest." (Pl. Objections Mem. 4.) Plaintiff's reading of § 296(16) is too expansive.[4] The law simply protects arrestees from "adverse consequences *merely* on the basis of an accusation." *Matter of Joseph M. (New York City Bd. of Educ.)*, 82 N.Y.2d 128, 131 (1993) (emphasis added); *see also Clemons v. WellPoint Companies, Inc.*, No. 11-CV-0084, 2013 WL 1092101, at *12 (N.D.N.Y. Mar. 15, 2013) ("Once an employer or licensing agency lawfully discovers an arrest record 'it [is] permissible to consider the independent evidence of the conduct leading to the criminal charges.'" (quoting *Skyline Inn Corp. v. New York State Liquor Auth.*, 44 N.Y.2d 695, 696 (1978)). As Judge Bloom found, there is nothing "illegal nor unfair" about an employer investigating employee conduct and terminating the employee based on substantial evidence of misconduct, "even though criminal charges have been dismissed." (R&R 20.)

---

[4] Plaintiff seems to recognize the expansiveness of her reading of the law, and, therefore, offers a limiting principle. According to Plaintiff, conduct underlying an arrest may be investigated but "that conduct must be related directly to the Plaintiffs ability to perform her job." (Pl. Objections Mem. 4.) However, Plaintiff then goes on to suggest that a subsequent investigation would be proper only if it excluded consideration of "the arrest of the conduct that brought it about." (*Id.*) The Court is then left with the impression that Plaintiff does indeed argue that the conduct underlying an arrest (which terminates favorably) may never be investigated by an employer. In addition, assuming that Plaintiff does argue for some job-related limitation to an employer's ability to investigate conduct underlying an arrest, the Court agrees with Judge Bloom in noting that the charges levied against Plaintiff do indeed relate to her job duties. (*See* R&R 21 n.18.)

Plaintiff, referring to NYSHRL § 296(16), also contends that arrests may only be considered when allowed by another statute or by a superior court. (Pl. Objections Mem. 4.) While this is true with respect to inquiries concerning arrests which terminated in an individual's favor, it is irrelevant for purposes of the motion before the Court. The protections of § 296(16), and its requirement of statutory or superior court authorization, are not triggered when, as happened here, the IHO's decision approving Plaintiff's termination was not based on Plaintiff's arrest but on independent evidence of Plaintiff's conduct underlying that arrest. (*See* R&R 19 (citing *Salanger v. U.S. Air*, 611 F. Supp. 427, 432 (N.D.N.Y. 1985) and *Scott D. v. New York City Dep't of Educ.*, 786 N.Y.S.2d 343, 344 (App. Div. 2004)).) Plaintiff makes no specific argument concerning the NYCPL.[5] Therefore, the Court adopts Judge Blooms finding that the NYCPL and the NYSHRL did not prohibit Defendant from investigating the conduct underlying Plaintiff's January 2011 arrest. In any event, as discussed above with respect to Plaintiff's claim of IHO bias in the face of contradictory evidence, the availability of a post-deprivation remedy in the form of an Article 75 proceeding provided Plaintiff with all the process due. Plaintiff's due process claim is dismissed.

### 3. Substantive Due Process

Plaintiff does not expressly articulate a substantive due process violation. However, liberally reading the Second Amended Complaint, Plaintiff may have attempted to do so. To state a claim for substantive due process Plaintiff must allege that: (1) she had a valid property

---

[5] The Court notes that both the NYSHRL and the NYCPL provide protections for arrestees only after a favorable termination. NYSHRL § 296(16) expressly applies to arrests "not then pending," N.Y. Exec. Law. § 296(16), and NYCPL § 160.50 and § 160.60 are triggered only "[u]pon termination of a criminal action," N.Y.C.P.L. § 160.50 and § 160.60. Thus, there is no evidence that Defendants engaged in conduct that violated either statute as the hearings commenced before the charges against Plaintiff terminated in her favor but concluded after the charged were terminated.

interest and (2) "defendants infringed on that property right in an arbitrary or irrational manner." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York*, No. 12-4959, slip op. at 14 (2d Cir. March 19, 2014) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007)). The second prong is satisfied "only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Harlen*, 273 F.3d at 505; *see also Cine SK8*, 507 F.3d at 785–89 (noting that racial animus and "fundamental procedural irregularity" satisfy the second prong of a substantive due process claim); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) ("conduct that 'shocks the conscience' violates substantive due process" (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952))).

Judge Bloom did not address Plaintiff's substantive due process claim except to recommend in a footnote that "any claim that the 3020-a decision was arbitrary and capricious should be dismissed as barred by collateral estoppel." (R&R 11 n.12.) It is unclear whether Judge Bloom was referring to "arbitrary" in the Constitutional sense. Nevertheless, it is clear from Judge Minardo's decision that he only addressed the sufficiency of the evidence before the IHO at Plaintiff's 3020-a hearing rather than the motivations of Defendant in bringing the charges against Plaintiff resulting in the 2011 3020-a hearing. Therefore, Plaintiff's substantive due process claim is not barred by collateral estoppel and is considered by the Court.

There is no dispute that Plaintiff had a protected property interest in her employment as a tenured teacher, satisfying the first element of a due process claim. *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) ("[I]t is well established that the state-law property interest of government employees who may only be discharged for cause, such as tenured teachers, is a constitutionally protected property interest for purposes of the Fourteenth Amendment."). With respect to the second element of her substantive due process claim, Plaintiff alleges that "the

prior 3020(a) hearings demonstrate that the defendant[] deliberately, intentionally and with reckless disregard for the truth leveled arbitrary and capricious charges against Plaintiff continuously in order to achieve her termination," (Second Am. Compl. ¶ 6), "Defendant[] continued to file arbitrary and capricious charges against Plaintiff until it reached her termination," (*id.* ¶ 7), and Defendant "exact[ed] revenge upon her through frivolous and arbitrary charges throughout the two years after Plaintiff succeeded in securing her employment at the manslaughter 3020(a) hearing," (*id.* ¶ 78). Accepting these allegations as true, Plaintiff *may* have alleged action plausibly characterized as "conscience-shocking" rather than "incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir. 2006). However, the exhibits attached to the Second Amended Complaint show that Defendant had legitimate bases for bringing charges against Plaintiff. (*See* 2009 IHO Decision and Order at 2 (charges based on Plaintiff's involvement in an incident which resulted in the death of her neighbor); 2010 IHO Decision and Order at 3 (charges based on alleged receipt of paid leave rather than requesting unpaid sick leave); 2011 IHO Decision and Order at 2 (charges based on alleged criminal conduct concerning a shooting).)

Even assuming that Plaintiff is correct that Defendant's actions were "designed to achieve her termination," (Pl. Objections Mem. 5), such a motivation behind bringing multiple 3020-a hearings is not "so outrageous and arbitrary as to implicate the [Plaintiff's] substantive due process rights," if the 3020-a hearings were otherwise based on legitimate evidence — which the IHO decisions attached to Plaintiff's Second Amended Complaint demonstrate that they were. *See Ferran*, 471 F.3d at 370; *see also 33 Seminary LLC v. City of Binghamton*, 869 F. Supp. 2d 282, 297–98 (N.D.N.Y. 2012) ("A decision can only be considered arbitrary where it had no basis in fact."). The potential harm of Defendant's action is further diminished given the

fact that Plaintiff had the procedural protections of the 3020-a hearing. *See Cozzi v. Great Neck Union Free Sch. Dist.*, No. 05-CV-1389, 2009 WL 2602462, at *13 (E.D.N.Y. Aug. 21, 2009) ("it is well established that the disciplinary procedures outlined in § 3020-a provide 'more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment'" (quoting *Montefusco v. Nassau County*, 39 F. Supp. 2d 231, 239–40 (E.D.N.Y. 1999)); *see also Harlen Associates*, 273 F.3d 494, 505 (2d Cir. 2001) ("substantive due process does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit" (citation and internal quotation marks omitted)). Therefore, Plaintiff has failed to state a plausible substantive due process claim.

### iii. First Amendment

#### 1. Expressive Association

Plaintiff argues that Judge Bloom incorrectly concluded that her association with "the shooter do[es] not touch on matters of public concern." (Pl. Objections Mem. 3.) Plaintiff believes that such association is a matter of public concern given her employment as a public school teacher. (*Id.*) As Judge Bloom made clear, the "First Amendment protects a public employee from retaliation by his or her employer for the employee's speech only if 'the employee sp[eaks] [1] as a citizen [2] on a matter of public concern." *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013) (alterations in original) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)); *see also Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004) ("We agree with the defendants and, joining the Fourth, Sixth and Seventh circuits, hold that a public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern."). A matter of public concern is one that "relat[es] to any matter of political, social, or other concern to the community." *Singer*, 711 F.3d at 339 (alteration in original) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "Among the

relevant considerations is whether the speech . . . had a broader public purpose." *Spencer v. Philemy*, 540 F. App'x 69, 70 (2d Cir. 2013).

Plaintiff argues that the choice of "who to date and share intimacy with" is at issue. (Pl. Objections Mem. 3.) The Court agrees and it is for this very reason that Judge Bloom correctly recommended dismissal of Plaintiff's First Amendment retaliation claim based on expressive association. Plaintiff cannot state a claim because whom Plaintiff dates and shares intimacy with is simply irrelevant to the public. *Compare Catalano v. Lehman*, No. 04-CV-389, 2007 WL 5520661, at *5 (W.D.N.Y. Sept. 27, 2007) ("Assuming the allegations of the complaint to be true — that plaintiff was subjected to adverse employment actions by the defendants because of his support and friendship with two co-workers who were under criminal investigation — I find that this associational conduct was not a matter of public concern."), *and Alba v. Ansonia Bd. of Educ.*, 999 F. Supp. 687, 693 (D. Conn. 1998) (dismissing a teacher's First Amendment retaliation claim as "his speech related only to his grievances about the non-continuation of his employment" rather than "social or political issues of interest to the community"), *with Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (reversing the lower court's dismissal of a teacher's First Amendment retaliation claim based on her speech concerning allegedly false statements made by the school's principal about student achievement). The Court adopts the R&R's recommendation and dismisses Plaintiff's First Amendment retaliation claim for failure to show that her expressive association with the alleged shooter touched on matters of public concern.

### 2. Intimate Association

Plaintiff argues Defendants have interfered with her right to intimation association, that the IHO made Plaintiff's "intimate association" an issue, and objects to Judge Bloom's recommendation that her association with the "alleged shooter" is not protected from government interference. (Pl. Objections Mem. 3.) "The right to intimate association was first

recognized by the Supreme Court in *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984)." *Matusick v. Erie Cnty. Water Auth.*, --- F.3d ---, ---, 2014 WL 700718, at *19 (2d Cir. Feb. 25, 2014).  The Supreme Court held that included within the "constitutionally protected 'freedom of association,'" is "the choice to 'enter into and maintain certain intimate human relationships [without] undue intrusion by the State.'"  *Id.* (quoting *Roberts*, 468 U.S. at 617–18).  Judge Bloom correctly noted that the Second Circuit has never held that the right to intimate association extends to social associations such as friendships, *Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002) ("[I]t is unnecessary to decide whether the right to intimate association extends to friendships as that question is not now before us."), and courts in this Circuit have rejected such claims, *see Silverstein v. Lawrence Union Free Sch. Dist. No. 15*, No. 10-CV-10-993, 2011 WL 1261122, at *6 (E.D.N.Y. Feb. 15, 2011) (rejecting an intimate association claim based on "a platonic friendship, even a long standing one of great intimacy"), *report and recommendation adopted*, No. 10-CV-10-993, 2011 WL 1261114 (E.D.N.Y. Mar. 30, 2011); *cf. Matusick*, --- F.3d at ---, 2014 WL 700718, at *19–21 (holding that a betrothed couple was protected by the right to intimate association as that relationship "involve[d] deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experience, and beliefs but also distinctively personal aspects of one's life" (quoting *Roberts*, 468 U.S. at 619–20)); *Dupont v. New Jersey State Police*, No. 08-CV-10220, 2009 WL 2486052, at *9 (S.D.N.Y. Aug. 14, 2009) (finding, in the qualified immunity context, that "[t]here was no clearly established law in 2006 and 2007 protecting friendship"); *but see Akers v. McGinnis*, 352 F.3d 1030, 1039–40 (6th Cir. 2003) ("Personal friendship is protected as an intimate association"); *Piscottano v. Murphy*, 511 F.3d 247, 278–80 (2d Cir. 2007) (seemingly accepting an intimate association argument based on "close personal friendships" but finding no

evidence that the group in question was "either a small group or a particularly selective group" and holding that "[i]n sum, the evidence in the record does not support plaintiffs' contention that [Department of Correction] imposed discipline on the basis of their close personal friendships."). Although not yet expressly protected, the case law is unclear enough to warrant against the categorical exclusion of all relationships less formal than "betrothed couples" from the protection of the U.S. Constitution.

However, even accepting that the right to intimate association extends to social associations, it certainly does not protect *all* friendships and acquaintances. *See Roberts*, 468 U.S. at 619–20 (identifying "size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent" as important factors in determining "relevant limitations on the relationships that might be entitled to this sort of constitutional protection"); *Matusick*, --- F.3d at ---, 2014 WL 700718, at *20 ("the [*Roberts*] Court recognized that the diversity of human relationships necessitated a sliding-scale analysis rather than a bright-line test"). Plaintiff has alleged no facts from which this Court could conduct "a careful assessment of where" her relationship to the alleged shooter falls "on a spectrum from the most intimate to the most attenuated" of intimate associations. *Id.* at 620. Therefore, Plaintiff has failed to show the plausible existence of a protected intimate association. The Court modifies the R&R to the extent that it can be read as excluding all friendships from the protection of the U.S. Constitution but adopts Judge Bloom's recommendation and dismisses Plaintiff's claim. However, the Court will allow Plaintiff to amend the Complaint if she can allege and support a plausible retaliation claim based on any intimate association.

**III. Conclusion**

For the foregoing reasons, Plaintiff's objections are overruled and the Court adopts, as modified, Judge Bloom's R&R pursuant to 28 U.S.C. § 636(b)(1). Accordingly, Defendant's motion to dismiss the Second Amended Complaint is granted. Plaintiff is granted 30 days to file an amended complaint as to her equal protection claim based on selective enforcement and her First Amendment retaliation claim based on her intimate association with the alleged shooter.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 20, 2014
        Brooklyn, New York